DONALD A. GAGNON & another[1] *vs.* DONALD SHOBLOM & another.[2]

Hampden. September 6, 1990. - January 9, 1991.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR & GREANEY, JJ.

*Workers' Compensation Act*, Settlement agreement, Action against third person. *Attorney at Law*, Compensation. Contingent fee agreement.

In a civil action in which a structured settlement was reached requiring the approval of the judge pursuant to G. L. c. 152, § 15, the judge was without authority to disapprove on his own motion the plaintiffs' attorney's fees, which were agreed to in a contingent fee agreement and not challenged by any party. [65-67] GREANEY, J., concurring.

CIVIL ACTION commenced in the Superior Court Department on November 4, 1988.

Proceedings for approval of a settlement agreement were heard by *John F. Moriarty*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Joseph W. Glannon* (*Alan R. Goodman* with him) for Alan R. Goodman.

*Charles B. Swartwood, III, Jerry E. Benezra, & Stephen Ostrach*, for Massachusetts Bar Association & others, amici curiae, submitted a brief.

*Charles W. Barrett, Jr., Anthony Tarricone, & Frank C. Corso*, for Massachusetts Academy of Trial Attorneys, amicus curiae, submitted a brief.

NOLAN, J. On June 9, 1988, at 1 P.M., a truck operated by Donald Shoblom crashed into a parked trailer, killing Susan

---

[1]Marie Gagnon, his minor child. Claims by other plaintiffs have been settled.

[2]Browning-Ferris Industries, Inc.

J. Thompson and severely injuring Donald Gagnon. Gagnon retained Attorney Alan R. Goodman in pursuit of his claim against Shoblom and Shoblom's employer, and for his workers' compensation claim. Gagnon and Mr. Goodman signed a contingent fee agreement in which Gagnon agreed that Mr. Goodman's compensation would amount to 33⅓% of the recovery in his personal injury claim. The entire contingent fee agreement is set forth as an appendix to this opinion.

Mr. Goodman commenced an action and, after extensive discovery and investigation, a structured settlement of $2,925,000 (present cash value) was reached,[3] subject to approval by the court under the statute discussed below.

A Superior Court judge conducted a hearing and indicated his approval of the terms of the settlement agreement except the provision for the fee of 33⅓% of the settlement, which amounted to $975,000. The judge called this fee unconscionable. There was an evidentiary hearing on the reasonableness of the settlement agreement. Gagnon testified that he voluntarily signed the contingent fee agreement and that he was satisfied that Mr. Goodman had earned his agreed fee. Additionally, a leading member of the bar who specializes in prosecuting personal injury claims for plaintiffs testified as to the reasonableness of the fee. The attorney who defended the action in the case testified as to the impressive work performed by Mr. Goodman. There was no evidence tending to prove that the fee was anything but reasonable.

However, the judge filed a carefully crafted memorandum and order in which he ordered payment of legal fees to Mr. Goodman as follows: "Mr. Goodman handled the case expeditiously and well. He obtained what I consider to be a very fine result. As stated above, he is entitled to handsome compensation.

---

[3]The settlement called for immediate cash payment of $800,000 to Gagnon and $50,000 to his self-insured employer to discharge the workers' compensation lien. The agreement also provides for substantial annual payments to Gagnon for life and deferred payments to Gagnon and his daughter.

"Taking those factors into account, as well as Mr. Goodman's ability and reputation (both of which are good) the demand for his services by others, the time reasonably spent, the expenses reasonably incurred by him and the charges usually made for similar services by others in Western Massachusetts, I am satisfied that the 33⅓ % maximum rate provided for in his contingent fee agreement should only be applied to the first $300,000.00 of the recovery. A rate of 25 % of the next $1,200,000.00, plus a rate of 20 % of all amounts in excess of $1,500,000 would be reasonable. At those rates Mr. Goodman is entitled to an attorney's fee of $695,000.00, which I consider to be 'handsome' compensation. Anything in excess of that amount would be unreasonable and excessive."

We allowed Mr. Goodman's request for direct appellate review of the correctness of the judge's order regarding the fee. We hold that it was error for the judge to disapprove the agreed fee.

In reaching this conclusion, we have examined G. L. c. 152, § 15,[4] set forth in full in the margin, and S.J.C. Rule 3:05, as appearing in 382 Mass. 762 (1981).

---

[4]General Laws c. 152, § 15 (1988 ed.), provides: "Where the injury for which compensation is payable was caused under circumstances creating a legal liability in some person other than the insured to pay damages in respect thereof, the employee shall be entitled, without election, to the compensation and other benefits provided under this chapter. Either the employee or insurer may proceed to enforce the liability of such person, but the insurer may not do so unless compensation has been paid in accordance with sections seven, eight, ten A, eleven C, twelve or nineteen nor until seven months following the date of such injury. The sum recovered shall be for the benefit of the insurer, unless such sum is greater than that paid by it to the employee, in which event the excess shall be retained by or paid to the employee. For the purposes of this section, 'excess' shall mean the amount by which the total sum received in payment for the injury, exclusive of interest and costs exceeds the compensation paid under this chapter. The party bringing the action shall be entitled to retain any costs recovered by him. Any interest received in such action shall be apportioned between the insurer and the employee in proportion to the amounts received by them respectively, exclusive of interest and costs. The expense of any attorney's fees shall be divided between the insurer and the employee in proportion to the amounts received by them respectively under this section. Except in the case of a settlement by agreement by the parties to, and during a trial of, such an action at law, no settlement by agreement

We need not dwell on the validity of the contingent fee agreement per se. It is not an issue; only the amount of the fee is before us and more especially, the authority of the judge in the circumstances of this case to nullify the amount of the fee.

Turning to § 15, we find no support for the judge's action in this statute. Within the very recent past, and after the judge's ruling in this case, we spoke to the limits of § 15 in *DiMartino* v. *Quality Indus. Propane, Inc.*, 407 Mass. 171, 175-176 (1990), where we said that the only purposes of requiring a judge's approval after a hearing on the merits of the settlement are to make sure that "(1) the employee's interests referenced in the statute are protected from being disregarded or unfairly dissipated by a settlement entered into by the insurer, and (2) the insurer's interests referenced in the statute receive similar protection with respect to a settlement entered into by the employee." *DiMartino, supra* at 176.

There is nothing in this language which permits a judge to substitute his evaluation of the legal services rendered pursuant to a contingent fee agreement. This case does not involve a dispute between the employee and the insurer arising out of the settlement by the insurer. Nor does this case trench on the insurer's rights with respect "to a settlement entered into

shall be made with such other person without the approval of either the board, the reviewing board, or the court in which the action has been commenced after an opportunity has been afforded both the insurer and the employee to be heard on the merits of the settlement and on the amount, if any, to which the insurer is entitled out of such settlement by way of reimbursement, which amount shall be determined at the time of such approval. In the case of a settlement by agreement by the parties to and during a trial of such an action at law, only the justice presiding at the trial shall have and exercise, relative to the approval of such settlement by agreement and to the protection of the rights and interests of the employee, the powers granted in the preceding sentence. Nothing in this section, or in section eighteen or twenty-four shall be construed to bar an action at law for damages for personal injuries or wrongful death by an employee against any person other than the insured person employing such employee and liable for payment of the compensation provided by this chapter for the employee's personal injury or wrongful death and said insured person's employees."

by the employee." *DiMartino* controls, and, hence, § 15 does not apply.

Rule 3:05 does not apply because no one is challenging the contingent fee agreement. Gagnon, the client, has intelligently and freely testified that he was satisfied with the amount of the fee.

The courts are not powerless to act in disapproving a fee which exceeds the percentage in the agreement, *Matter of Kerlinsky*, 406 Mass. 67, 73-74 (1989), a fee to which the client never agreed, see *DeSautels, petitioner*, 1 Mass. App. 787, 793-795 (1974), or a fee which is plainly unreasonable. On objection by a party entitled to challenge the lawfulness or reasonableness of a fee, a judge has inherent power to act. However, we need not discuss the court's inherent power in this case because no one is challenging the fee.

Accordingly, an order shall enter approving the entire settlement, including the amount of compensation due to Mr. Goodman under the contingent fee agreement.

*So ordered.*

Gagnon *v.* Shoblom.

## APPENDIX TO THE OPINION OF THE COURT.

Law Firm Of
### ALAN R. GOODMAN

### CONTINGENT FEE AGREEMENT

Date . . 6-23-88 . . . . . . . . . .

The Client . . . . . . . Donald A. Gagnon    38 Felicia St., Springfield, MA . . . . . . . . . . . . .
                     (Name)                (Street & Number)                    (City or Town)
retains the Law Firm of        ALAN R. GOODMAN        1350 Main Street        Springfield, MA 01103
to perform the legal services mentioned in paragraph (1) below. The attorney agrees to perform them faithfully and with
due diligence.

(1) The claim, controversy, and other matters with reference to which the services are to be performed
    are:
    an accident which occurred on or about    6 / 9    /88

(2) The contingency upon which compensation is to be paid is:
    33 3% ~~if settled before suit~~
    ~~35% if settled after suit before trial or after arbitration/mediation~~
    ~~40% if settled after trial but before verdict or judgement~~
    ~~45% if verdict or judgement~~
    ~~50% if appeal taken~~
    ~~An additional 15% (minimum $100.00) of PIP and Med. Pay collected in auto cases.~~

(3) The client is not to be liable to pay compensation otherwise than from amounts collected for him by
    the attorney, ~~except that~~ is responsible for following costs:
    Out of pocket expenses, such as costs of medical reports and opinions, filing fees, sheriff's fees,
    service of subpoena, witness fees, photographs, excessive postage and photocopying, long distance
    telephone calls, research materials, expert witness opinions and fees, file initialization, travel costs,
    investigator's reports. Said costs are ~~deducted from gross settlement after calculation of attorney's~~
    fees.                              to be included in

(4) Reasonable compensation on the foregoing contingency is to be paid by the client to the attorney,
    but such compensation (including that of any associated counsel) is not to exceed the maximum
    percentages of the gross amount collected as specified in (2) above.

(5) The client is in any event to be liable to the attorney for his reasonable expenses and disbursements
    (3) above even if no settlement is made.

(6) If the attorney is discharged by the client prior to the conclusion of this representation, the attorney
    is entitled to be then compensated for his reasonable expenses and disbursements. Further, the
    attorney is to be compensated for the fair value of the services rendered to the client up to the time of
    discharge, but the amount of the fee shall not be due to the attorney until the subject matter litigation
    is concluded pursuant to Paragraphs 2 and 3 above.

    This agreement and its performance are subject to Rule 3:05 of the Supreme Judicial Court of
    Massachusetts

WE EACH HAVE READ THE ABOVE AGREEMENT BEFORE SIGNING IT.
CLIENT ACKNOWLEDGES RECEIPT OF CARBON COPY.

Witnesses to Signature
(To Client) . . . . . . . . . . *Nancy X. Hall* . . . . . .        . . . . *Donald A. Gagnon* . . . . . . . . . . . . . . .
                                                                              (Signature of Client)

(To Attorney) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
                                                                              (Signature of Client)
                                    6/25/88    . . . . *Alan R. Goodman* . . . . . . . . . . .
                                                                              (Signature of Attorney)

Practice Limited To Personal Injury Law

350 MAIN STREET, BANK OF BOSTON BUILDING 12th FLOOR, SPRINGFIELD, MA 01103        413·736·1616
                                    App-60                                         Form No. G-108 Rev 6 87

GREANEY, J. (concurring). I do not agree with the court's conclusion that the judge lacked authority (apart from the Superior Court's inherent power) to examine the attorney's fees pursuant to G. L. c. 152, § 15 (1988 ed.).

That statute requires a judge, when the settlement of a third-party action occurs during trial (as it did here), to examine the merits of the settlement to ensure "the protection of the rights and interests of the employee." Surely, it is not a violation of this statutory language to permit a judge, when appropriate, to examine the reasonableness of the employee's attorney's fees and any agreement pertaining thereto, particularly where the fee amounts to a sizeable portion of the settlement. The language quoted from the court's opinion in *DiMartino* v. *Quality Indus. Propane, Inc.*, 407 Mass. 171, 176 (1990), in my view, is not decisive. The *DiMartino* case concerned the sole issue whether an insurer, who was not a party to the employee's third-party action, could challenge the allocation of the proceeds of the settlement when the insurer's lien under § 15 was satisfied in full. The passage relied on by the court was written to reject the insurer's argument that, notwithstanding full satisfaction of its financial interests, it was entitled to an offset against possible future workers' compensation benefits that might be due Gagnon. The question of attorney's fees obviously was not raised or considered in *DiMartino*, so to say, as the court does, that the quoted language forecloses the judge's authority under § 15 to evaluate the reasonableness of the attorney's fee is an unjustified extension of the decision's holding. The attorney's fee in a case like this can constitute a very large deduction from the settlement, is an integral part thereof, and, when appropriate, should be examined by the judge under the statutory mandate that the court must review all the components of the settlement "to . . . protect[ ] . . . the rights and interests of the employee."

I agree with the court that the attorney's fee in this case should not have been reduced. The evidence before the judge sufficiently indicated that the contingent fee agreement was reasonable "in light of the circumstances prevailing at the

time of [the] making [of the agreement]." S.J.C. Rule 3:05
(6), as appearing in 382 Mass. 762 (1981). This conclusion is
reinforced by the fact that the client, Gagnon, has made no
objection to the contingent fee agreement and has affirma-
tively stated his satisfaction both with the work done and the
percentage charged by Goodman. It is also a consideration
that the one-third percentage has become institutionalized in
the practice of the litigation bar as the minimum rate to be
charged in the typical tort case. Change, if it is to come,
should not come suddenly and to the disappointment of long-
standing expectations.

The judge, however, has touched upon a larger issue. His
memorandum frames that issue in this manner:

> "Contingent fee agreements made in a good faith effort
> reasonably to comply with Rule 3:05 are no longer re-
> garded as champertous, and they have become an im-
> portant part of the administration of justice. They serve
> a very beneficial public purpose. They have been said to
> be the 'poor man's key to the courthouse' because they
> do provide a method whereby civil claims can be filed
> and litigated by persons who would otherwise be unable
> to afford the assistance of counsel. They are, neverthe-
> less, a matter of special judicial concern and subject to
> strict supervision by the court . . . .
> "I am satisfied (both on the basis of my own experience
> as a practicing attorney and as a trial judge as well as
> by the evidence presented at the hearings) that in the
> case of a civil tort action in which damages are sought
> for personal injuries a contingent fee of 33⅓% of the
> amount recovered is reasonable to a point, depending
> (among other factors of course) upon the size of the re-
> covery ultimately obtained. I am also satisfied, however,
> that as the size of the recovery (and hence the size of
> the fee) increases, the spread between the attorney's fee
> and the fair value of the time, effort and skill that he
> devoted to earning that fee widens — and at some point
> the fee becomes unreasonable and even (if the spread

becomes wide enough) outrageous or unconscionable. "One should not lose sight of the fact that under our law a recovery for a personal injury is limited, at least in theory, to the fair and reasonable value of the pain and suffering, mental anguish, reasonable medical expenses, disfigurement, disability and lost earning capacity, both past and future, *sustained by the client.* However, attorney's fees incurred by the client are not recoverable in such a case, either as part of or in addition to his damages. Any fee that the attorney exacts from the client under a contingent fee agreement must therefore reduce the client's compensation for his injury below what is fair and reasonable. When, as in this case, the injury sustained by the client is catastrophic, the amount of the reduction can become enormous unless some rule of reason is applied to the application of the contingent fee. It is, after all, Mr. Gagnon and not Mr. Goodman who must spend the remainder of his life confined to a wheelchair with no bowel or bladder control and with constant dependence upon others to assist him in the normal tasks of day-to-day living . . . ." (Emphasis in original; citation omitted.)

As the judge noted, the Legislature has dealt with this problem in the area of medical malpractice. General Laws c. 231, § 60I, added by St. 1986, c. 351, § 27, became effective on July 23, 1986. That statute provides, in pertinent part, that an attorney may not contract for, or collect, a contingent fee in a medical malpractice action in excess of the following limits: (1) 40% of the first $150,000 recovered; (2) 33 ⅓% of the next $150,000 recovered; (3) 30% of the next $200,000 recovered; and (4) 25% of any amount by which the recovery exceeds $500,000. The statute goes on to provide that nothing therein shall preclude a court from assessing reasonable attorney's fees at any amount below these specified limits, or from determining that attorney's fees below such limits are unreasonably high in a particular case.

At a time when the gap between the service and the fee in tort cases appears to be becoming more and more pronounced, there may be a need to establish a better sense of proportion. This case is illustrative of the problem.[1] The question raised by the judge deserves honest debate.

[1]The judge noted the existence of facts which tended to question the reasonableness of the fee agreement. At the time of the accident, Gagnon was lawfully parked in the breakdown lane of the Massachusetts Turnpike near a disabled tractor-trailer truck. The disabled tractor-trailer was being driven by a young woman who had pulled off the travel lane because she had noticed that the mud flaps on her truck were rubbing against her rear trailer wheels. To help the woman, Gagnon went underneath the rear of the trailer to attempt to correct the problem. While he was in that position a loaded garbage truck operated by Shoblom veered off the highway into the breakdown lane and crashed into the tractor-trailer. The woman was killed as the result of the collision, and Gagnon sustained massive injuries which left him a paraplegic. Thus, when the contingent fee agreement was signed Goodman knew that the liability aspect of Gagnon's case was very strong, that his injuries were catastrophic, and that it was apparent that Gagnon would receive a very substantial judgment or settlement from Shoblom's corporate employer.

Additionally, the judge noted that this was not a single case from Goodman's point of view. Goodman had also been retained to represent the administrator of the woman's estate in his claim for wrongful death, conscious suffering and punitive damages against Shoblom and his employer, and Goodman was later retained to represent the woman's mother in her individual claim for negligent infliction of emotional distress. Preparation of Gagnon's case would also benefit these claims for which Goodman was charging an additional fee.