## JAIME PINTO vs. ABERTHAW CONSTRUCTION COMPANY & others.[1]

No. 92-P-656.

Middlesex. May 13, 1993. - September 1, 1993.

Present: PERRETTA, GILLERMAN, & GREENBERG, JJ.

Further appellate review granted, 416 Mass. 1107 (1993).

*Workers' Compensation Act*, Attorney's fees, Action against third person, Recovery from third person, Settlement agreement. *Attorney at Law*, Compensation.

In a workers' compensation case in which the insurer had brought a third-party action against those claimed to be responsible for the claimant's injuries, attorneys' fees resulting from a settlement were apportionable between counsel for the insurer and counsel for the claimant, consistent with the provisions of G. L. c. 152, § 15. [255-258]

The record of the hearings on a settlement agreement of a third-party action arising from a workers' compensation case did not support the judge's ruling that the insurer's attorney was entitled to the entire amount of legal fees recovered and the claimant's attorney nothing; the matter was remanded for a redetermination of the relative value of legal services rendered in connection with the settlement and a redetermination of the division of the fees. [258-259]

CIVIL ACTION commenced in the Superior Court Department on May 16, 1989.

A motion for determination of entitlement to attorneys' fees was heard by *Charles F. Barrett*, J.

*Richard T. Tucker* (*Barbara S. Liftman* with him) for Weinstein, Bernstein & Burwick, P.C.

*Marc LaCasse* (*Marjorie O. Dresser* with him) for McCormack & Epstein.

GREENBERG, J. Compromise is often the solution to a dispute over the division of legal fees, but the law firms of McCormack &· Epstein and Weinstein, Bernstein, & Burwick

---

[1] Foxborough Investment Company and Cabot, Cabot & Forbes Development Company.

(Weinstein) failed to bridge the distance separating them. Under G. L. c. 152, § 15, a statute which governs the distribution of the proceeds of a third-party action as between the injured employee and the workers' compensation insurer, see *Taylor* v. *Trans-Lease Group*, 34 Mass. App. Ct. 404 (1993), a dispute arose when the insurer's counsel, McCormack & Epstein, claimed the lion's share of the fee. Weinstein, counsel to Pinto, the injured employee, objected. The question was submitted to a Superior Court judge, who awarded McCormack & Epstein the entire fee. We reverse.

The dispositive facts are undisputed, as must be the case when a question of law is considered. Pinto was hurt on July 7, 1988 (a fracture of the radial head of his right elbow) when he fell from one floor to another at a project in which Aberthaw Construction Company was the general contractor. United States Fidelity and Guaranty Company (USF&G) was the workers' compensation insurer for Pinto's employer, S&F Concrete Contractors, Inc., which was hired by the general contractor to complete the flooring. Pinto received workers' compensation benefits from the date of his mishap until his workers' compensation claim was ultimately settled by lump-sum compromise.

On May 16, 1989, ten months after his injury, USF&G, by its attorneys, McCormack & Epstein, prepared and filed the third-party action on behalf of Pinto against three defendants claimed to be responsible for his injury.[2] On June 27, 1989, Weinstein sent a letter to McCormack & Epstein expressing their intention to represent Pinto primarily with respect to the third-party action. In response, McCormack & Epstein offered an uneven split fee arrangement that allowed Weinstein to act as participating counsel in the litigation of Pinto's case. McCormack & Epstein thought it fair for Weinstein to receive a third of the one-third contingency fee

---

[2]Authority for the insurer to initiate a third-party action no sooner than seven months following the date of the injury is found in G. L. c. 152, § 15. For a brief history of the legislative development of the law in this area see *Burke* v. *Atlantic Research Corp*, 18 Mass. App. Ct. 497, 499-500 (1984), and *Costa* v. *Liberty Mut. Ins. Co.*, 29 Mass. App. Ct. 176, 178 (1990).

proposed to be deducted from Pinto's prospective net recovery (i.e., gross recovery less workers' compensation lien). Their proposal was rejected in no uncertain terms by Weinstein.

In due course, a negotiated settlement of Pinto's case for $175,000 was effected, and an amended petition for approval of the settlement was filed and assented to by all parties and respective counsel. On February 1, 1991, after a hearing, the settlement was approved by a Superior Court judge. See *Hartford Acc. & Indem. Co.* v. *Atlantic Research Corp.*, 395 Mass. 1009 (1985); *DiMartino* v. *Quality Indus. Propane, Inc.*, 407 Mass. 171, 173 (1990).

Under the settlement agreement approved by the court, USF&G was to be reimbursed $88,000 for its workers' compensation lien. Of the balance of $87,000 net settlement to Pinto, one-third of that amount, or $29,000, was agreed to be set aside as Pinto's full legal fee. Not a word was uttered at the settlement hearing about the festering dispute between the attorneys as to how the fee would be allocated.[3]

Negotiations about the matter broke down, precipitating a second hearing held in Superior Court on August 20, 1991. Both law firms submitted records of time spent working on the case. The judge declined to assign any portion of the fee to Weinstein; he ruled, instead, that once the employee closed his seven-month window of opportunity to bring the third-party action, the insurer's attorneys were entitled to the entire fee. Weinstein appeals.

Section 15 is silent on the precise question presented here. In *Burke* v. *Atlantic Research Corp.*, 358 Mass. 764, 765 (1971), the identical issue was posed, but in circumstances where the Supreme Judicial Court found it unnecessary to

---

[3]Compare *Carney* v. *Ramirez*, 21 Mass. App. Ct. 994 (1986). In this medical malpractice action, the court enforced the settlement agreement, which provided for full reimbursement of the compensation lien. The agreement also provided for payment of the plaintiff's attorney. There was no mention of apportionment or reimbursement of the compensation carrier's proportionate share of fees. Since the agreement had been negotiated by competent legal counsel, the court enforced that judge-approved settlement.

pass upon the question. We start with the proposition found in the earlier cases that "[p]resumably whoever brings the action at law against the third party will control the proceedings, in that he will determine where the suit is brought . . . will complete the pleadings, handle the investigation, negotiate settlement, and try the case." Locke, Workmen's Compensation § 670 (2d ed. 1981). Perhaps it was this notion which led the judge to the mistaken conclusion that by losing the race to the courthouse, Pinto forfeited any allocation of the proceeds to pay for separate representation.

We have commented that "[t]he drafters of § 15 apparently assumed an adversary relationship between the insurer and the employee-claimant, rather than a fiduciary relationship. . . ." *Costa* v. *Liberty Mut. Ins. Co.*, 29 Mass. App. Ct. 176, 178-179 (1990). Both the injured employee and the insurer do have compatible interests in seeking recovery against the tortfeasor; but once assured that the prospective offer of compromise fully satisfies its lien, see *Taylor* v. *Trans-Lease Group*, 34 Mass. App. Ct. at 409, the insurer has little incentive to continue the litigation to secure a larger award or settlement. The employee's entitlement to an "excess"[4] award and the protection afforded an injured employee to proceed along that path was recognized. See note 2, *supra; Richard* v. *Arsenault*, 349 Mass. 521, 523-524 (1965). For that reason alone, the extra burden placed upon the employee to compensate retained counsel out of his own pocket, as would result here if we accepted McCormack & Epstein's argument, seems inconsistent with the statutory scheme, which, in part, was designed to protect the employee's interests.

Relying principally upon *Daly's Case*, 405 Mass. 33 (1989), McCormack & Epstein argues that once the insurer gains control of the litigation, and in the absence of an agreement to the contrary, the injured employee is obliged to pay

---

[4]"Excess" is defined by G. L. c. 152, § 15 (1988 ed.), as the "amount by which the total sum received in payment for the injury, exclusive of interest and costs, exceeds the compensation paid under this chapter." See *Bruso's Case*, 295 Mass. 531 (1936).

the full share of the attorney's fees to the insurer's counsel. Such reliance is misplaced. The *Daly* court held that in a situation where the employee's attorney controlled the litigation by filing suit first, the insurer must pay the employee's attorney a proportionate share of the legal fee because the insurer was a "beneficiary of the third-party action." *Id.* at 37. To the extent that the insurer satisfied its lien, through the efforts of the employee's attorney, it owed a duty to contribute to the cost of the litigation, which did not depend on whether it hired its own attorney.

Underpinning the *Daly* holding was the rationale that no real conflict of interest existed between the employee and insurer, *Daly's Case*, 405 Mass. at 37-38 n.4, and thus, the insurer's interest would always be protected. While the insurer was deemed a passive beneficiary of the action in *Daly's Case*, the employee cannot be considered in the same position here. To the contrary, the employee is wholly dependent upon hiring his own attorney in order to maximize his recovery and to assure receiving independent advice concerning the value of his claim.

Our construction of § 15, as protective of the employee's remedial rights, is supported by the second sentence of the section which does not divest the employee of the right to initiate a third-party suit even after the first seven months subsequent to the injury. See Locke, Workmen's Compensation § 669 (2d. ed. 1981). The legislative history of § 15 is consistent with such an interpretation. See *Costa* v. *Liberty Mut. Ins. Co.*, 29 Mass. App. Ct. at 178.

We do not formulate a rule which would prevent a judge, in appropriate circumstances, from awarding the entire fee to the workers' compensation insurer's attorney who has rendered substantial performance in bringing about an excess recovery for the injured employee. That question, which has been left open under § 15, is to be judicially determined on a case-by-case basis. It follows that under a statute that does not require, but has been construed to permit, apportionment of the claimant's attorneys fees (see *Carney* v. *Ramirez*, 21 Mass. App. Ct. 994, 995 [1986]), the services provided by

the claimant's attorneys may be taken into account in adjusting the amount to be paid to the respective lawyers.[5]

There remains the question of the appropriate apportionment of the $29,000 set aside when negotiations between the firms foundered. The judge determined that "the vast bulk of the work was done by [McCormack & Epstein]." But the billings submitted by Weinstein to the judge at the time of the second hearing appear not to support that conclusion. Far from laboring in the shadow of the insurer's counsel, Weinstein — as noted in the time records submitted to the judge in support of its position — performed significant pretrial work, including participation at various depositions and court hearings.

There is nothing in *Gagnon* v. *Shoblom*, 409 Mass. 63 (1991), which prevents the judge in this case, on remand, from reaching an independent determination of the relative value of legal services rendered by each firm in connection with the settlement. In fact, such an assessment is required under *DiMartino* v. *Quality Indus. Propane, Inc.*, 407 Mass. at 175-176. Some factors, among others, which may be weighed when apportioning attorneys' fees between the contesting firms, are: (1) the extent of the active and effective participation of respective counsel for trial preparation and pretrial proceedings before the settlement agreement was undertaken; (2) the extent to which each firm's representation brought about the ultimate settlement; (3) the involvement of each firm's negotiations with opposing counsel in bringing about a fair and reasonable recovery for the employee; and (4) the cost to the respective firms of the legal services necessary to complete work reasonably required.

Accordingly, the order of the Superior Court judge directing that the entire fee approved under the settlement agreement be paid to McCormack & Epstein is vacated, and

---

[5]In some jurisdictions, the subject of fees when both the compensation insurer and the employee are represented by separate counsel is specifically dealt with by statute. Under Cal. Labor Code § 3856(*c*) (Deering 1991) there is a specific formula for apportionment of the attorneys' fees "based solely upon the service rendered in each instance by the attorney effecting recovery for the party represented."

the case shall be remanded to the Superior Court for a redetermination of the division of attorneys' fees between the contesting law firms.

*So ordered.*