JAIME PINTO *vs.* ABERTHAW CONSTRUCTION COMPANY
& others.[1]

Middlesex. April 5, 1994. - July 29, 1994.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & GREANEY, JJ.

*Workers' Compensation Act*, Attorney's fees, Action against third person, Recovery from third person, Settlement agreement. *Attorney at Law*, Compensation, Contingent fee agreement.

In a workers' compensation case in which a judge, after a hearing on a settlement agreement of a third-party action brought by the insurer pursuant to G. L. c. 152, § 15, awarded the entire attorney's fee set aside from the claimant's recovery in excess of the insurer's lien to the insurer's attorneys and awarded the claimant's attorney nothing, the matter was remanded for an apportionment of attorney's fees depending on the relative value of the legal services rendered in connection with the settlement where there was a basis in the record for both the insurer's attorneys and the claimant's attorney to claim some part of the fee. [498-502]

CIVIL ACTION commenced in the Superior Court Department on May 16, 1989.

A motion for determination of entitlement to attorneys' fees was heard by *Charles F. Barrett*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Richard T. Tucker* for Weinstein, Bernstein & Burwick, P.C.

*Marc LaCasse* (*Marjorie O. Dresser* with him) for McCormack & Epstein.

GREANEY, J. At issue in this case is the division between an insurer's attorney and an employee's attorney of an attor-

---

[1]Foxborough Investment Company. and Cabot, Cabot & Forbes Development Company.

ney's fee set aside from an employee's recovery in excess of the insurer's lien in a workers' compensation action brought by the insurer's attorneys pursuant to the third-party provisions of G. L. c. 152, § 15 (1992 ed.). After a hearing, a judge in the Superior Court awarded the entire $29,000 fee to the insurer's attorneys, the law firm of McCormack & Epstein. We granted McCormack & Epstein's application for further appellate review after the Appeals Court, 35 Mass. App. Ct. 253 (1993), ordered the matter remanded to the Superior Court for a redetermination of the division of attorney's fees between McCormack & Epstein and the law firm of Weinstein, Bernstein & Burwick (Weinstein), which had represented the employee. We conclude, as did the Appeals Court, that the matter should be remanded to the Superior Court, where the judge should reconsider the division of the attorney's fee in accordance with the principles expressed in this opinion.

The undisputed facts, as recited by the Appeals Court (with some omissions and additions) are as follows:

"[Jaime Pinto, the injured employee,] was hurt on July 7, 1988 (a fracture of the radial head of his right elbow) when he fell from one floor to another at a project in which Aberthaw Construction Company was the general contractor. United States Fidelity and Guaranty Company (USF&G) was the workers' compensation insurer for Pinto's employer, S&F Concrete Contractors, Inc., which was hired by the general contractor to complete the flooring. Pinto received workers' compensation benefits from the date of his mishap until his workers' compensation claim was ultimately settled by lump-sum compromise.

"On May 16, 1989, ten months after his injury, USF&G, by its attorneys, McCormack & Epstein, prepared and filed the third-party action on behalf of Pinto against three defendants claimed to be responsible for his injury. On June 27, 1989, Weinstein sent a letter to McCormack & Epstein expressing their intention to represent Pinto primarily with respect to the third-party action. In response, McCormack & Epstein offered [a] . . . split fee arrangement that [would

have] allowed Weinstein to act as participating counsel in the litigation of Pinto's case. [Under the arrangement, Weinstein would have received] a third of the one-third contingency fee proposed to be deducted from Pinto's prospective net recovery (i.e., gross recovery less workers' compensation lien)." 35 Mass. App. Ct. at 254-255. Weinstein rejected the proposal, insisting that they had a contingent fee agreement with Pinto, intended to continue representing him in the third-party action, and expected to be compensated based on the contingent fee agreement.

"In due course, a negotiated settlement of Pinto's case for $175,000 was effected, and an amended petition for approval of the settlement was filed and assented to by all parties and respective counsel. On February 1, 1991, after a hearing, the settlement was approved by a Superior Court judge. See *Hartford Acc. & Indem. Co.* v. *Atlantic Research Corp.*, 395 Mass. 1009 (1985); *DiMartino* v. *Quality Indus. Propane, Inc.*, 407 Mass. 171, 173 (1990).

"Under the settlement agreement approved by the court, USF&G was to be reimbursed $88,000 for its workers' compensation lien. Of the balance of $87,000 net settlement to Pinto, one-third of that amount, or $29,000, was agreed to be set aside as Pinto's full legal fee." *Id.* at 255. The agreement did not address a division between McCormack & Epstein and Weinstein of the $29,000 reserved out of Pinto's recovery for attorney's fees.

The law firms were unable to reach an agreement on an allocation of the fee. On July 2, 1991, McCormack & Epstein filed a motion for a determination of entitlement to attorney's fees in the Superior Court. After a hearing, the judge, indicating that Weinstein had assisted in handling the matter, but that McCormack & Epstein had done "the vast bulk of the work," ordered that the entire fee be paid to McCormack & Epstein.[2]

---

[2]At the outset, we reject McCormack & Epstein's argument that the appeal is not properly before us. A Superior Court judge's approval and allocation of settlement proceeds, pursuant to G. L. c. 152, § 15 (1992 ed.), is subject to appellate review. See *DiMartino* v. *Quality Indus. Pro-*

Section 15 of G. L. c. 152 provides that "[t]he expenses of attorney's fees shall be divided between the insurer and the employee in proportion to the amounts received by them respectively, under this section." The legislation is silent on the question presented here: To whose attorney, or in what proportion to the employee's and the insurer's attorneys, should those fees be allocated? Each of the parties to this appeal claims to be entitled to the fee in its entirety and contends that there is no legal basis for an allocation of any part of the fee to the other. In awarding the entire fee to McCormack & Epstein, the judge appears to have concluded that an employee who does not file suit within the seven-month statutory period[3] must trust entirely for legal advice and representation on the attorney selected by the insurer who has brought suit under G. L. c. 152, § 15, as a statutory subrogee. For reasons explained below, we conclude that there is a basis for each law firm to claim some part of the fee, and we agree with the Appeals Court that the judge should apportion the fee depending on "the relative value of legal services rendered by each firm in connection with the settlement." 35 Mass. App. Ct. at 258.[4]

pane, Inc., 407 Mass. 171, 174 (1990). The parties to the settlement agreed to waive all rights of appeal. The petition for approval of settlement was signed by attorneys from McCormack & Epstein, and from Weinstein, in their respective capacities as counsel for the insurer and the employee. As noted above, the agreement did not address the allocation of the attorney's fee reserved out of Pinto's agreed settlement. Counsel were not "parties" to the settlement agreement, and Weinstein's signature thereto does not constitute a waiver of its right to appeal from the judge's allocation of the entire fee to McCormack & Epstein.

[3]General Laws c. 152, § 15, governing third-party actions in workers' compensation cases, has, since 1980, granted to an injured employee the exclusive right to bring a third-party action in the first seven months after the occurrence of a job-related injury. St. 1980, c. 488. See DaRoza v. Arter, 416 Mass. 377, 379 n.2 (1993); Costa v. Liberty Mut. Ins. Co., 29 Mass. App. Ct. 176, 178 (1990).

[4]Some jurisdictions deal by statute with the subject of fees when the insurer and the employee each are represented by counsel actively involved in the litigation. For example, in Texas, when the employee brings suit, but the insurer's attorney "actively represents [the insurer] and actively participates in obtaining a recovery," the court apportions the fees between the

Weinstein has taken the position that McCormack & Epstein is prohibited by ethical constraints from recovering any part of the fee reserved from Pinto's recovery. We disagree. The provisions of G. L. c. 152, § 15, are, in certain respects, unambiguous. If an employee does not bring suit within seven months of the date of the injury, either the insurer or the employee, but not both, may file suit.[5] When, as occurred in this case, the insurer files suit, it controls the ensuing litigation. See *Bongiorno* v. *Liberty Mut. Ins. Co.*, 417 Mass. 396, 403 (1994) (third-party action brought by employee under control of employee); *DaRoza* v. *Arter, supra* at 383-384; *Costa* v. *Liberty Mut. Ins. Co.*, 29 Mass. App. Ct. 176, 178 (1990). While § 15 and Mass. R. Civ. P. 17 (a), 365 Mass. 763 (1974), permit the insurer to bring suit in the employee's name, see *DaRoza* v. *Arter, supra* at 382 n.5, recovery is to the insurer. It was observed in *Daly's Case*, 405 Mass. 33, 37 n.3 (1989), that it is the party who brings suit who actually pays the attorney's fee (which, by statute, must come from the insurer and the employee in proportion to

worker's and the insurer's attorneys, not to exceed one-third of the recovery. Tex. Rev. Civ. Stat. Ann. art. 8307 § 6a (West 1967). Fees deducted from the insurer's recovery are allocated based on the actual benefit to the insurer of the services provided by each attorney. See *Twin City Fire Ins. Co.* v. *Meave*, 743 S.W.2d 765, 766 (Tex. Ct. App. 1988).

In California, when the insurer and the employee each are represented, attorney's fees are apportioned "based solely upon the services rendered in each instance by the attorney in effecting recovery for the benefit of the party represented." Cal. Lab. Code § 3856(c) (Deering 1991). However, in California, the employee is, in effect, usually required to shoulder the entire legal bill. Costs and attorney's fees first are charged against the sum recovered from the third party. The employer then is entitled to be reimbursed for the entire amount of the compensation payments it has made to the employee. *Id.*

Because of differences in the statutory schemes of the individual States, the law of other jurisdictions is of limited value in resolving the question before us. See 2A A. Larson, Workmen's Compensation Law § 74.32(a) (1993 & Supp. 1993).

[5]The insurer plainly had the right to reject, as contrary to the language of G. L. c. 152, § 15, any request by Weinstein to take control of the litigation or to act as cocounsel. The contention that seven months is an unreasonably short period in which to file suit is properly addressed to the Legislature and not to this court.

each one's share in the recovery), "pursuant to [that party's] agreement with the attorney." Thus, in *Daly's Case*, where the employee brought suit, the argument was rejected that requiring the insurer to compensate the employee's attorney from its share of the recovery amounted to "forcing" the insurer into an attorney-client relationship with the employee's attorney. *Id.* at 37. Similarly, apportioning the fee set aside from Pinto's recovery does not "force" him into an attorney-client relationship with McCormack & Epstein. That firm represented its client, USF&G. To the extent Pinto benefited from the work performed by McCormack & Epstein for USF&G, however, he is required by § 15 to assist with paying the costs associated with the benefit conferred on him. *Id.* See *Hunter* v. *Midwest Coast Transp., Inc.*, 400 Mass. 779, 785 (1987).

Pinto cannot rely on the contingent fee agreement signed with Weinstein to avoid this obligation to contribute to compensation for McCormack & Epstein. That agreement obviously was signed in anticipation of Weinstein's filing the third-party action and performing the associated legal work. We also reject the argument that S.J.C. Rule 3:05 (4) and (5), as appearing in 382 Mass. 762 (1981), requiring that contingent fee agreements be in writing and contain certain information,[6] prohibits an award of fees to McCormack & Epstein in an amount approaching the standard one-third

---

[6]S.J.C. Rule 3:05, as appearing in 382 Mass. 762 (1981), provides, in part:

"(4) Each contingent fee agreement shall be in writing in duplicate. Each duplicate copy shall be signed by the attorney and by each client. . . .

"(5) Each contingent fee agreement shall contain (a) the name . . . of each client; (b) the name . . . of the attorney or attorneys to be retained; (c) a statement of the nature of the claim, controversy, and other matters with reference to which the services are to be performed; (d) a statement of the contingency upon which compensation is to be paid, and whether and to what extent the client is to be liable to pay compensation otherwise than from amounts collected for him by the attorney; (e) a statement that reasonable contingent compensation is to be paid for such services, which compensation is not to exceed stated maximum percentages of the amount collected;

contingent fee. See *Gagnon* v. *Shoblom*, 409 Mass. 63, 70 (1991) (Greaney, J., concurring). Subsection 3 of S.J.C. Rule 3:05, as appearing in 382 Mass. 762 (1981), authorizes contingent fee "arrangements concerning the collection . . . of insurance company subrogation claims made in accordance with usual practices in respect of such cases," and exempts such "arrangements" from the requirements of subsections (4) and (5). Rule 3:05 thus permits an attorney for an insurer, in the exercise of the insurer's statutory subrogation rights under G. L. c. 152, § 15, to file suit in the name of an injured employee, and recover fees on a contingency basis, without a contingent fee agreement between the insurer's attorney and the employee in whose name the third-party action is brought.

Weinstein's final contention is that a conflict exists in the interests of an insurer and an employee when the insurer controls the third-party action and that § 15, therefore, must be construed to permit the employee to compensate counsel who will zealously represent the employee's interests rather than the insurer's. In response to this contention, and in support of its claim to the entire fee, McCormack & Epstein relies on *Daly's Case, supra,* which, it maintains, stands for the proposition that the right to collect a full attorney's fee, from insurer and employee, follows the right to control the litigation. There is, however, a difference which cannot be ignored in the position of the insurer in *Daly's Case,* and the position of an employee when a third-party action is controlled by counsel for the insurer. Once an insurer receives an offer of settlement that satisfies its statutory lien, it may have little or no incentive to continue the litigation to secure a larger settlement or verdict. The employee, on the other hand, who only benefits to the extent the third-party recovery exceeds the insurer's statutory lien, has an interest in maximizing any possible third-party recovery. Case law has recognized this situation as creating a potential conflict of inter-

and (f) a stipulation that the client, in any event, is to be liable for expenses and disbursements."

est. See *DaRoza* v. *Arter*, *supra* at 383-384; *Costa* v. *Liberty Mut. Ins. Co.*, *supra* at 178-179. See also 2A Larson, Workmen's Compensation Law § 74.16(a), at 14-403; § 74.16(b), at 14-408 (1993). In part because of this potential conflict, it has even been said (in the absence of an express attorney-client relationship) that an insurer's attorney owes no duty of care to the employee in whose name a third-party action is brought. See *DaRoza* v. *Arter*, *supra* at 383.[7]

Because of the prospect of conflict, when an insurer brings and controls a third-party action, we think the "expenses of attorney's fees" referred to in § 15 should include, in appropriate cases, an allowance of fees to an attorney who has provided essential legal services to the employee. If the rule was otherwise, an employee would be required to choose between relying on counsel for the insurer, despite the potential for conflict described above, or further diminishing his third-party recovery by compensating his own, in addition to the insurer's, attorney. See 2A A. Larson, *supra* at § 74.32, at 14-588 (when insurer and employee are represented by counsel, there is a risk that "the attorneys' fees will consume an inordinate amount of the proceeds of the suit").

While an employee's right to independent legal advice should be acknowledged, we nonetheless assume that, when the attorney for an insurer files a third-party action, the right to the major part of the fee reserved out of an employee's recovery will, in most cases, follow the insurer's right to control the litigation. Where counsel for the insurer keeps the employee and his attorney apprised of progress in the case, attempts at active involvement in the litigation by the employee's attorney are likely to yield little benefit to the em-

---

[7]General Laws c. 152, § 15, requires the approval "of either the [industrial accident] board, the [industrial accident] reviewing board, or the court" before a third-party action may be settled. McCormack & Epstein contends that this provision adequately protects the interests of an employee when counsel for an insurer controls the course of a third-party action. An employee's need for legal advice, however, is most acute when an offer of settlement is made, before the parties appear before the board or a judge seeking approval of a negotiated settlement agreement.

ployee. The employee's need for independent legal advice is most pressing at the point at which the insurer's and the employee's interests may be in conflict; that is, when an offer of settlement is made. In apportioning the fee between McCormack & Epstein and Weinstein, the judge must be concerned with the actual benefit accruing to Pinto as a result of the services of Weinstein, with respect to the settlement that was achieved.

As has been stated with respect to the calculation of an attorney's fee in other contexts, the decision as to the proper apportionment of an attorney's fee is largely discretionary with the judge. See *Fontaine* v. *Ebtec Corp.*, 415 Mass. 309, 324 (1993). See also *Twin City Fire Ins. Co.* v. *Meave*, 743 S.W.2d 765, 766 (Tex. Ct. App. 1988) (apportionment of attorney's fee in workers' compensation case between counsel for insurer and counsel for employee "is a matter resting in the sound discretion of the trial court"). Accordingly, we express no view as to the appropriate allocation between McCormack & Epstein and Weinstein of the $29,000 attorney's fee.

The order of the judge directing that the entire $29,000 fee be awarded to McCormack & Epstein is vacated. The case is remanded to the Superior Court for a redetermination of the allocation of the attorney's fee in accordance with this opinion.

*So ordered.*