LINCOLN E. SMITH *vs.* ROBERT W. CONSALVO & another.[1]

No. 93-P-195.

Suffolk. February 3, 1994. - August 22, 1994.

Present: ARMSTRONG, KASS, & SMITH, JJ.

*Attorney at Law*, Compensation, Contingent fee agreement. *Civil Rights*,
    Attorney's fees. *Interest. Practice, Civil*, Counterclaim and cross-claim.

Recovery by an attorney under a contingent fee agreement between the
    attorney and a client providing for the attorney to be paid one-third of
    the gross amount collected was not limited by the amount of attorney's
    fees determined and awarded in the underlying action pursuant to 42
    U.S.C. § 1988, where the contingent fee was not otherwise challenged
    as, and demonstrated to be, "plainly unreasonable." [194-199]
In an action brought under G. L. c. 221, § 50, by an attorney to recover a
    legal fee pursuant to a contingent fee agreement, interest on the judg-
    ment properly ran from the date the client had received his settlement
    proceeds. [199]
In a civil action the judge properly within his discretion denied the defend-
    ant's motion to file a counterclaim, filed after the matter had been
    scheduled for trial. [199]

CIVIL ACTION commenced in the Superior Court Depart-
ment on December 3, 1987.

The case was heard by *Thomas E. Connolly*, J., on a mo-
tion for summary judgment.

*Paul L. Nevins* (*Philip R. Olenick* with him) for the
plaintiff.

*Barbara A.H. Smith & Allen N. David* (*Harvey Weiner*
with them) for Regina L. Quinlan.

KASS, J. To establish how she would be compensated for
representing him in claims against the city of Boston and its
director of personnel, Lincoln Smith's lawyer, Ms. Regina L.

---

[1]City of Boston. Consalvo, at times material to this case, was director of
personnel for the city of Boston.

Quinlan,[2] prepared a contingent fee agreement in the form prescribed by S.J.C. Rule 3:05(7), 382 Mass. 763-765 (1981), specifying a fee of one-third of the recovery, plus disbursements. Highly successful on behalf of her client, Ms. Quinlan secured a jury verdict in favor of Smith against Robert W. Consalvo, the director of personnel, on a civil rights claim and recovered, as part of the judgment on that claim, reasonable counsel fees under 42 U.S.C. § 1988 (1988), in the amount of $41,319.78. As to the city, the trial judge allowed a motion for a directed verdict. If we skip over some detail not immediately pertinent, the next material fact is that Smith and the city ultimately settled for $253,600 (inclusive of the verdict against Consalvo). Ms. Quinlan calculated her contingent fee by deducting from the $253,600 the amount attributable to legal fees, $41,319.78, and multiplying the remainder, $212,280.22, by one-third, a product of $70,760.07, to which was ultimately added $3,922.23 on account of disbursements, a total of $74,682.30. The calculation takes into account that Smith has already received and holds in his account the $41,319.78 awarded for his legal expenses. Consequently, the net contribution which Smith will be making to those expenses out of his own pocket will come to $33,362.52 ($74,682.30 minus $41,319.78). Smith's position is that under the contingent fee agreement, one-third of the recovery represented the upper limit of what would be a reasonable fee, but that when Ms. Quinlan certified to $41,319 as her reasonable fees under § 1988, on the basis of time and customary hourly charges, she was bound by that figure and could not charge the contingent fee based on a percentage. Acting on a summary judgment motion, a judge of the Superior Court determined that Ms. Quinlan was entitled to her percentage fee and ordered entry of a judgment in

---

[2]While the events of this case were taking place, Ms. Quinlan was a practicing lawyer. She was inducted as an Associate Justice of the Superior Court on June 25, 1992.

the amount of $74,682.30, plus interest from August 2, 1991.[3] We affirm.

After underbrush is cleared away, the only significant question that remains is whether a contingent fee agreement made in accordance with rule 3:05 guidelines means a fee limited by "lodestar" standards of time charges, see, e.g., *Blanchard* v. *Bergeron*, 489 U.S. 87, 94 (1988), or means that the percentage formula in the agreement shall apply. That disputed issue is one of contract interpretation, properly to be undertaken by a court. *Robert Indus., Inc.* v. *Spence*, 362 Mass. 751, 755 (1973). *USM Corp.* v. *Arthur D. Little Sys., Inc.*, 28 Mass. App. Ct. 108, 116 (1989). Material facts are not in dispute, and the case, therefore, was apt for disposition on a motion for summary judgment. See *Federal Deposit Ins. Corp.* v. *Csongor*, 391 Mass. 737, 740-741 (1984). Smith does not claim that Ms. Quinlan failed to perform services sufficiently substantial to bring the contingent fee

---

[3]As implied in the main text, there are collateral details not pertinent to the appeal but worth setting out to give a full and accurate picture. The jury verdict against Consalvo came to a total of $142,000. On behalf of Smith, Ms. Quinlan filed an appeal from the dismissal against the city after allowance of a directed verdict. The directed verdict was upheld on appeal. See *Smith* v. *Boston*, 413 Mass. 607 (1992). Following negotiations conducted for Smith by Ms. Quinlan, the city offered a settlement of $230,000, inclusive of the award against Consalvo, in return for Smith's withdrawing his appeal. The components of that figure were the jury verdict, prejudgment and postjudgment interest, and the counsel fees which had been awarded. Smith expressed dissatisfaction with the offer and, on January 7, 1991, wrote to Ms. Quinlan asking her permission to consult with another lawyer before agreeing to the settlement. Ms. Quinlan, on January 18, 1991, filed a motion to withdraw as Smith's counsel on the basis of a breakdown of the lawyer-client relation. Simultaneously, she filed a motion under G. L. c. 221, § 50, to establish and enforce an attorney's lien for attorney's fees and costs. See generally, as to the application of the attorney's lien statute, *Boswell* v. *Zephyr Lines, Inc.*, 414 Mass. 241, 248-249 (1993). The ultimate settlement of $253,600 was reached by successor counsel. When she learned of that settlement, Ms. Quinlan moved successfully to have Smith's successor counsel deposit $67,088.95 (a figure based on Ms. Quinlan's original application for an attorney's lien) from the settlement in an interest bearing escrow account, pending further order of the court.

agreement into operation.[4] Nor does Smith challenge the reasonableness of the underlying contingent fee agreement; he challenges what it means. The principle that the reasonableness of a contingent fee agreement presents a jury issue, therefore, is not relevant to this controversy.[5]

The contingent fee agreement made by the parties adhered to the text which S.J.C. Rule 3:05(7) provides "shall be sufficient." In pertinent part it said:

> "(4) Reasonable compensation on the foregoing contingency is to be paid by the client to the attorney, but such compensation (including that of any associated counsel) is not to exceed the following maximum percentages of the gross amount collected. (Here insert the maximum percentages to be charged in the event of collection. These may be on a flat basis or in a descending scale in relation to the amount collected.) 33 ⅓%.

> "(5) The client is in any event to be liable to the attorney for his reasonable expenses and disbursements."

In considering Smith's claim that reasonable compensation under the contingent fee agreement is limited by what has been determined as reasonable under § 1988, it is well to bear in mind that the claimants under the agreement and the statute, respectively, are not the same person. The statute makes the prevailing party, not the lawyer, eligible for an award of legal costs. *Evans* v. *Jeff D.*, 475 U.S. 717, 730 (1986). *Venegas* v. *Mitchell*, 495 U.S. 82, 90 (1990). *American Trucking Assns.* v. *Secretary of Admn.*, 415 Mass. 337, 352 n.16 (1993). In determining a § 1988 award, courts use

---

[4]That issue might have arisen because Ms. Quinlan withdrew on her initiative from the lawyer-client relation, and the aggregate amount of the settlement paid by the defendants after her withdrawal increased by $22,400. Compare *Opert* v. *Mellios*, 415 Mass. 634, 636-637 (1993); *Salem Realty Co.* v. *Matera*, 10 Mass. App. Ct. 571, 576 (1980), *S.C.*, 384 Mass. 803, 804 (1981); *Phelps Steel, Inc.* v. *Von Deak*, 24 Mass. App. Ct. 592, 594 (1987).

[5]For cases which explicate that principle, see *Cameron* v. *Sullivan*, 372 Mass. 128, 132 (1977); *Guenard* v. *Burke*, 387 Mass. 802, 808 (1982).

time charges as the guiding principle, i.e., the lodestar, although other customary fee-setting factors such as complexity of the problem, ingenuity of the solution, difficulties surmounted, and result achieved may push a fee up or down, as the case may be. See *Pennsylvania* v. *Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986); *Blanchard* v. *Bergeron*, 489 U.S. at 94. Courts have gone to some pains to reject a contingent fee approach to determining what shall be paid to the prevailing party under § 1988. *Id.* at 96. *Venegas* v. *Mitchell*, 495 U.S. at 86-87. *Burlington* v. *Dague*, 505 U.S. 557, 562-565 (1992). *American Trucking Assns.* v. *Secretary of Admn.*, 415 Mass. at 352-353. Not the least of the reasons for that rejection is that rights vindicated in cases where a § 1988 award is recoverable may be only in part pecuniary, so that a percentage of the amount recovered may be much less than the value of the services. See *Fontaine* v. *Ebtec Corp.*, 415 Mass. 309, 326 n.14 (1993).

When legal expenses are collected from a party other than the one who received the legal services, a degree of conservatism in fee determination is in order. *Grimes* v. *Perkins Sch. for the Blind*, 22 Mass. App. Ct. 439, 440 (1986). *Price* v. *Cole*, 31 Mass. App. Ct. 1, 7 (1991). Reasonable time multiplied by reasonable hourly rates, in such a case, is a pragmatic approach to not being excessively generous with another's dollars. As between lawyer and client, the case stands differently; courts then are less conservative because the amount of the fee is ordinarily something that has been discussed and agreed upon. See *First Natl. Bank* v. *Brink*, 372 Mass. 257, 265-266 (1977). A contingent fee agreement may be necessary to secure the services of a lawyer when a successful result is far from certain, and the client has not the means to compensate a lawyer win, lose, or draw. See *Venegas* v. *Mitchell*, 495 U.S. at 89-90. Section 1988 does not prevent clients from contracting to pay a fee which may exceed the amount determined as reasonable under the statute, and the statute should not be read as insulating those clients from paying the fees they have contracted to pay. *Ibid.* See also *Blanchard* v. *Bergeron*, 489 U.S. at 93-96, which

presents the mirror image of the case before us and decided that the § 1988 fee ought not to be limited by a contingent fee agreement. Compare *Benalcazar* v. *Goldsmith*, 400 Mass. 111, 113 & n.9 (1987).

It remains to ask whether the standard rule 3:05(7) contingent agreement text, which speaks in terms of "[r]easonable compensation . . . not to exceed the following maximum percentage of the . . . amount collected," limits the fee to a more calibrated measure — such as a time charge — with the percentage factor constituting an "upset" figure. Such an approach would contradict the theory of the contingent fee, which is to exchange the possibility of the client paying no fee should the case turn out badly for the possibility of a generous fee for the lawyer if the case turns out well. *Blaisdell* v. *Ahern*, 144 Mass. 393, 395-396 (1887). Jay, The Dilemmas of Attorney Contingent Fees, 11 Georgetown Journal of Legal Ethics 813, 814 (1989). Thomason, Are Attorneys Paid What They're Worth? 20 Journal of Legal Studies 187 (1991). Posner, Economic Analysis of Law, § 21.9 at 534-535 (3rd ed. 1986). Judge Posner makes the observation that a "contingent fee compensates the lawyer not only for the legal services [rendered] but for the loan of those services." Application of the agreed upon percentage factor ought presumptively to be regarded as a reasonable fee. See *Johnson* v. *Blacke*, 32 Mass. App. Ct. 399, 403 (1992), in which a contingent fee of 20%, as applied, was well within bounds in a market sense if matched against the criteria contained in S.J.C. Rule 3:07, DR 2-106(B), as amended, 382 Mass. 772 (1981).

That does not mean that a percentage formula in a contingent fee agreement is invulnerable to attack. A client may challenge a fee which is "plainly unreasonable," *Gagnon* v. *Shoblom*, 409 Mass. 63, 67 (1991), although as that case illustrates, a percentage factor of 33⅓% is well within the limit of tolerance, even when the resulting fee is dramatic. See also *Venegas* v. *Mitchell*, 495 U.S. 82, 83-84 (1990), contingent fee of 40% approved; *Johnson* v *Blacke, supra*, 20% approved. Contrast *Matter of Kerlinsky*, 406 Mass. 67,

72-74 (1989), cert. denied, 498 U.S. 1027 (1990), in which a contingent fee of one-third was unremarkable but aggregate charges by lawyers of 65% of the recovery were disapproved.

Although we have remarked that Smith has not challenged the reasonableness of the contingent fee agreement as entered into, but concentrates on its meaning, reading his brief generously, there is a flank attack on the question of reasonableness. This comes in the form of an argument that, prior to action on Ms. Quinlan's motion for summary judgment, he ought to have been permitted to discover Ms. Quinlan's usual hourly rates and what other contingent fee agreements she had made in other cases. Although the reasonableness of a fee is generally a matter for the finder of fact, in this case the facts which Smith disputes are not material and do not affect the appropriateness of the case for summary judgment. Ms. Quinlan's customary hourly rates, apart from marginal relevance when a contingent fee had been arrived at, were published in the materials supporting the application for fees under § 1988. The client did not then protest the hourly fees stated for Ms. Quinlan and her associate. The point is frivolous. What other contingent fee agreements Ms. Quinlan may have made would hardly be material to this particular case. A percentage factor of 33⅓% in contingent fee agreements is routine. It is not disputed that there was an element of novelty and difficulty in the plaintiff's case. Skill was required to perform the services properly. The calibre of the services rendered was first rate. The results achieved for the plaintiff both in terms of principle and money were highly satisfactory. See S.J.C. Rule 3:07, DR 2-106(B), as amended, 382 Mass. 772 (1981); First Natl. Bank v. Brink, 372 Mass. at 266-267; Johnson v. Blacke, 32 Mass. App. Ct. at 403. There was no evidence that a one-third contingent fee was higher than the norm in Massachusetts or elsewhere.

The application of the percentage factor in the contingent fee agreement was not limited by the standards governing the application for legal expenses under § 1988, and the contingent fee agreement means that the percentage factor as

applied to the recovery constitutes a reasonable fee, absent compelling circumstances to the contrary.

There are two subsidiary matters. The award of interest beginning with August 2, 1991, is correct because that is the date on which Smith received the settlement proceeds from the city of Boston and it is, therefore, the date on which Smith should have tendered to Ms. Quinlan her fee in accordance with the contingent fee agreement. Denial of Smith's attempt to file a counterclaim coming, as it did, after Ms. Quinlan's petition under G. L. c. 221, § 50, had been scheduled for trial, was within the discretion of the Superior Court judge. *United States Leasing Corp.* v. *Chicopee*, 402 Mass. 228, 233 (1988). *Walsh* v. *Chestnut Hill Bank & Trust Co.*, 414 Mass. 283, 287 (1993). *DiVenuti* v. *Reardon, ante* 73, 77-78 (1994).

*Judgments affirmed.*