CAMBRIDGE TRUST COMPANY & another[1] *vs.* HANIFY & KING
PROFESSIONAL CORPORATION.

Middlesex. November 5, 1999. - December 21, 1999.

Present: ABRAMS, LYNCH, GREANEY, IRELAND, SPINA, & COWIN, JJ.

*Attorney at Law,* Compensation, Contingent fee agreement. *Contract,* Attorney, Compensation of attorney, Contingent fee agreement. *Consumer Protection Act,* Attorney's fees. *Damages,* Attorney's fees.

A negotiated contingent fee agreement between a law firm and its client which included as one component a percentage of attorney's fees awarded by an arbitrator on a G. L. c. 93A claim was enforceable, and the contingent percentage was to be applied to the aggregate settlement including attorney's fees, where S.J.C. Rule 3:05, as appearing in 382 Mass. 762 (1981), and applicable at the time the agreement was made, did not prohibit such an agreement [475-476]; where the terms of the agreement were straightforward and unambiguous [476-477]; and where the agreement was fairly negotiated [477-478].

This court concluded that where a contingent fee agreement is ambiguous or silent as to how attorney's fees are to be treated, the contingent percentage must be calculated on the total award of damages minus the court-awarded fees, with the attorney awarded the greater of the two amounts. [478-481]

CIVIL ACTION commenced in the Superior Court Department on March 25, 1997.

The case was heard by *Hiller B. Zobel,* J., on a motion for summary judgment.

The Supreme Judicial Court granted an application for direct appellate review.

*William F. Macauley (Daniel C. Reiser* with him) for the plaintiffs.

*John A.D. Gilmore* for the defendant.

GREANEY, J. A judge in the Superior Court granted summary judgment to the defendant law firm, Hanify & King Professional Corporation (H & K), in connection with a controversy between H & K and the plaintiffs, Cambridge Trust Company

[1]Cambridge On-Line Services, Inc.

and Cambridge On-Line Services, Inc. (collectively, CTC), over a contingent fee agreement. The judgment allowed H & K to be paid attorney's fees under the contingent fee agreement on the entire amount (less certain deductions) of an arbitrator's award which assessed both damages under G. L. c. 93A, and attorney's fees, on CTC's claims against NCR Corporation (NCR). CTC asserts that attorneys should not be permitted in a contingent fee agreement to provide that the fee apply to court-awarded attorney's fees and, if such an arrangement is permissible, that the agreement in this case is unenforceable. We granted CTC's application for direct appellate review to examine these contentions. We affirm the judgment.

The facts and procedural background of the case may be summarized as follows. In early December, 1994, a director of CTC, who is a lawyer, made contact with H & K on CTC's behalf to explore the possibility of H & K's representing CTC in litigating claims it had against NCR concerning alleged defects in software and software services furnished by NCR to CTC. There was discussion of fees, with H & K indicating that the firm occasionally took cases on a contingent fee basis, but recommending that the firm be engaged to pursue the matter on an hourly fee basis. H & K was so retained.

CTC's claims were subject to an arbitration agreement between CTC and NCR, which mandated that all disputes be arbitrated, and CTC and H & K understood that CTC's claims would be resolved in arbitration. H & K began to prepare the claims and billed for its legal work on an hourly basis.

As the matter progressed, H & K and CTC revisited the possibility of H & K prosecuting the arbitration on a contingent fee basis. There was extensive correspondence and negotiations concerning a contingent fee arrangement. CTC was aware during the negotiations that one of its claims in arbitration would assert violations by NCR of G. L. c. 93A, and that recovery under that claim would include not only damages (possibly multiple), but also an award of attorney's fees and costs. On November 7, 1995, CTC and H & K executed a contingent fee agreement which provided as follows:

> "Hanify & King ('H & K') will look to the proceeds of the arbitration claim to be filed by CTC against AT&T/ NCR in satisfaction of all fees accrued after September 1, 1995 and subject to the following additional terms and conditions:

"1) All expert and H & K expenses to be paid by CTC as they accrue;

"2) H & K to keep its time;

"3) H & K to receive compensation for its services on the net amount of the settlement; 25% of such amount recovered after settlement or arbitration up to $1 million; 30% of such amount above $1 million and up to $2 million; and 35% of such amount in excess of $2 million. (Reference is made to the spread sheet dated September 13, 1995 and column three thereof which illustrates the application of the formula set forth in this agreement on the basis of assumed expenses totalling [*sic*] $200,000.[2])

"The net amount shall be calculated by subtracting from the gross settlement $100,000[3] plus all expenses paid under paragraph one. Expenses associated with the consulting services of [named consultants] or other consultants not retained by H & K as experts in the arbitration shall be excluded from paragraph one."

The demand for arbitration was thereafter filed and a lengthy arbitration hearing was held. H & K submitted to the arbitrator in connection with CTC's claim for damages under G. L. c. 93A, § 11, an affidavit for the recovery of attorney's fees in the amount of $442,422. The arbitrator issued a written award ordering NCR to pay CTC $2,032,301 in compensatory damages; finding a violation of G. L. c. 93A, but declining to award multiple damages; and directing that CTC recover attorney's fees of $409,200. CTC subsequently entered a written settlement agreement with NCR, and NCR paid $2,464,988.19 to resolve the award. CTC and H & K could not agree, however, on the calculation of fees due under the agreement. H & K took the position that the agreement unambiguously allowed it to apply the percentages to the aggregate of the settlement amount,

---

[2]This spreadsheet provided examples as to how the gross amount of a settlement would be divided according to different formulas. The sheet did not distinguish between damages and attorney's fees.

[3]The amount of this credit reflected a compromise between CTC and H & K on the $170,000 H & K had earned and been paid based on hourly billing between the date of its retention and September 1, 1995, when the contingent fee agreement by its terms became effective to cover legal fees accruing thereafter.

which included damages and attorney's fees under G. L. c. 93A. CTC was of the opinion that the "percentages due [H & K under the agreement] should be based on the damage award . . . and not on the total of the damage award and the [arbitrator's] reimbursement for legal fees."

CTC subsequently filed an action in the Superior Court asserting that H & K had violated the contingent fee agreement by basing its fee on the entire amount of the settlement and seeking a declaration pursuant to G. L. c. 231A that the contingent fee agreement was unenforceable. Cross motions for summary judgment were filed. The judge denied CTC's motion and allowed H & K's motion, stating the following reasoning in his memorandum of decision:

> "The [contingent fee] agreement here is not ambiguous: [H & K] was to receive a percentage of 'the net amount of the settlement,' that is, the amount recovered, less $100,000 and certain expenses.

> "Nothing in the agreement differentiated between amounts recovered as damages and amounts recovered as attorneys' fees. The parties knew that the claim [H & K] was to prosecute included such fees. If the parties had contemplated treating the two types of proceeds differently they could (and should) have said so.

> "The signatories were experienced, sophisticated entities who labored through several proposed versions before they finally reached the final draft. Under the circumstances, a court should not re-do their product."

A judgment declaring the rights of the parties was entered, and this appeal followed.

1. In *Benalcazar* v. *Goldsmith*, 400 Mass. 111, 114 n.10 (1987), we left open the question "whether a contingent fee contract which includes as one component a percentage of attorney's fees awarded by the court would be enforceable."[4] For the reasons next stated, we shall enforce the agreement in this

---

[4]The contingent fee agreement in *Benalcazar* v. *Goldsmith*, 400 Mass. 111, 113 (1987), contained a provision calling for application of a one-third contingency percentage to the aggregate of damages and court-awarded attorney's fees. Because the one-third of the aggregate of damages and court-

case. We shall then go on to discuss the issue generally, in light of its importance, both to lawyers and clients who would seek their services on a contingent fee basis.

At the time of their understanding, S.J.C. Rule 3:05, as appearing in 382 Mass. 762 (1981), specifically permitted CTC and H & K to enter a contingent fee agreement to provide for the payment of H & K's attorney's fees for its work on CTC's claim against NCR.[5] The rule was silent on whether a court award of attorney's fees along with damages could be subject to division under a contingent fee agreement. The rule generally permitted an attorney, subject to limitations not relevant here, to negotiate such provisions as the attorney and client might agree on for "compensation, contingent in whole or in part upon the successful accomplishment or disposition of the subject matter of the agreement . . . in an amount which either is fixed or is to be determined under a formula." S.J.C. Rule 3:05 (1). The rule went on to prescribe requirements that had to be included in a contingent fee agreement, including a requirement of a "statement of the contingency upon which compensation is to be paid." S.J.C. Rule 3:05 (5) (d). In the absence of an express prohibition in S.J.C. Rule 3:05, or in case law, of a contingent fee agreement that allowed the fee percentage to include a court award of attorney's fees as required by statute in the underlying case, CTC and H & K were free to contract on the point. We reject CTC's argument that, having done so (if H & K's position is upheld), the agreement should not be enforced on general policy grounds. "[S]tatutory awards of fees can coexist with private fee arrangements . . . [a]nd just as we have recognized that it is the party's entitlement to receive the fees in the appropriate case, so have we recognized that . . . it is the party's right to waive, settle, or negotiate that eligibility." (Citations omitted.) *Venegas* v. *Mitchell*, 495 U.S. 82, 88 (1990).

We also do not accept CTC's arguments that the agreement is

awarded attorney's fees was less than the amount of court-awarded fees that the attorney received, we concluded that the attorney had been paid in full, and we rejected his claim that he was entitled to both the court-awarded fees and one-third of the damages. *Id.* at 114. Thus, we left open the issue quoted in the text because it was unnecessary to decide the issue in order to resolve the controversy.

[5]Supreme Judicial Court Rule 3:05 was superseded by S.J.C. Rule 3:07, the new Massachusetts Rules of Professional Conduct, effective January 1, 1998, which in Mass. R. Prof. C. 1.5 (c)-(f), 426 Mass. 1315 (1998), provides for contingent fees in much the same way as S.J.C. Rule 3:05.

unenforceable because it lacks a precise statement concerning the allocation of court-awarded attorney's fees, is otherwise ambiguous on the point, or fails for lack of full disclosure on H & K's part. The contingent fee agreement is straightforward. It states that H & K will look to the "proceeds of the arbitration claim . . . in satisfaction of all fees," and, after conclusion of the arbitration, states that the contingent fee will be based on the "net amount of the settlement." The latter term is critical to interpreting the agreement because (a) the arbitrator's award resulted in a written settlement agreement between CTC and NCR; and (b) that agreement required a lump-sum payment of $2,464,988.19 to H & K (on behalf of CTC), a distribution which included G. L. c. 93A damages and attorney's fees as one aggregated item. Hence, a literal construction of the language of the contingent fee agreement sustains H & K's position and satisfies us that the agreement is precise enough and free from impairment by reason of ambiguity.

CTC was adequately informed about, and understood or should have understood, the scope of the contingent fee agreement. CTC's president and representatives were not naifs or innocents. H & K advised them before the contingent fee agreement was signed that CTC's G. L. c. 93A claim would seek recovery of damages and attorney's fees, which H & K viewed as an element of damages. CTC was expressly warned by H & K that a contingent fee agreement, once a successful result is reached, often leaves the client unhappy.[6] CTC's representatives were shown a copy of the arbitration demand which expressly included "claims against NCR pursuant to [G. L. c.] 93A, [§ ] 11, includ[ing] claims for [CTC's] reasonable attorney's fees," and relevant cases discussing liability and recovery under G. L. c. 93A were shown to them. The contingent fee agreement was the subject of intense negotiations, and it contained reference to a spreadsheet which provided several examples of how the contingent fee would be calculated based on hypothetical settlement amounts. Importantly, CTC had the advice throughout of one of its directors who was a lawyer af-

---

[6]When the prospect of a contingent fee agreement was being discussed, John D. Hanify, a partner in H & K, advised CTC's president in a letter that such agreements may result in client dissatisfaction because "at harvest time, some business people take the recovery for granted and become fixated on the apparent richness of the fees. This happens even when the options available to a client are fully and fairly discussed."

filiated with a large Boston law firm and had been general counsel to a major university. This lawyer was referred to by CTC's president (in connection with the litigation and the contingent fee agreement) "as serving as a surrogate general counsel to CTC."

All of these circumstances were detailed in an affidavit by H & K (supported with correspondence and documents) which was not rebutted by CTC's representatives claiming confusion or lack of knowledge. No direct claim of misrepresentation has been made. The controversy instead has focused on the meaning of the contingent fee agreement. Thus, in the special circumstances of the case, we conclude that there was adequate information made available to CTC, so that the contingent fee agreement could be understood. Because the negotiations were fairly and equitably conducted, with no allegations of misrepresentation or concealment, and CTC had independent legal advice throughout, we are satisfied that there was no breach of H & K's fiduciary duty here. See *Cleary* v. *Cleary*, 427 Mass. 286, 290-291 (1998), and cases cited. For the reasons given by the judge, summary judgment in favor of H & K was proper.[7]

2. What has been said resolves the controversy before us. We turn now to the broader issue of the future status of contingent fee agreements that may relate to court-awarded attorney's fees. We can find no authority that makes it per se unreasonable for an attorney and client to agree that the attorney is to be paid a percentage of a total award, which may include damages as well as court-awarded attorney's fees. We conclude, however,

---

[7]CTC also argues that H & K violated S.J.C. Rule 3:07, Canon 9, DR 9-102 (A) (2), as appearing in 419 Mass. 1303 (1995), because it paid its entire fee from the funds received from NCR in the settlement, thereby not complying with the portion of the rule which states that "[i]f the right of the . . . law firm to receive [the] portion [of funds belonging to it] is disputed by the client, the disputed portion shall not be withdrawn [by the firm from its trust account] until the dispute is resolved." The record does not establish whether H & K violated this rule in letter or spirit. CTC authorized H & K to sign the settlement agreement with NCR. The agreement called for H & K to receive the entire payment on behalf of CTC, which the firm did, thereafter remitting the net amount due CTC (according to H & K's calculations). The transmittal letter from H & K "note[d] [CTC's] reservation of rights" as to the fee, and a prior note to H & K from CTC's president expressed the "hope that the difference of opinion [over the fee] can be resolved speedily and amicably." H & K may not have been required to segregate the disputed funds, and, from all we know, may have held the funds apart. In any event, this aspect of the case provides no basis to invalidate the contingent fee agreement.

that where a contingent fee agreement is ambiguous or silent as to how attorney's fees are to be treated, the contingent percentage must be calculated on the total amount minus the court-awarded fees, with the attorney awarded the greater of the two amounts.

There is no question that contingent fee agreements constitute a valid and vital legal resource which enable plaintiffs with meritorious causes of action, but who lack funds to pay a lawyer, to obtain justice for themselves, and, in many cases, for others similarly situated. Moreover, there are a wide range of statutes and laws that permit or mandate the recovery of attorney's fees by plaintiffs who seek to enforce private rights alone or together with broader public rights. The provision for the award of attorney's fees in G. L. c. 93A and Federal and State civil rights and discrimination laws are just some examples. Generally, when a court award of attorney's fees is made pursuant to such laws, the right to the award belongs to the client, who may waive, settle, or negotiate with respect to that right. See *Evans* v. *Jeff D.*, 475 U.S. 717, 730-731 (1986). Contingent fee agreements and court-awarded attorney's fees may coexist independently of one another. See *Venegas* v. *Mitchell*, 495 U.S. 82, 88 (1990); *American Trucking Ass'ns* v. *Secretary of Admin.*, 415 Mass. 337, 352 n.16 (1993); *Smith* v. *Consalvo*, 37 Mass. App. Ct. 192, 198-199 (1994). A contingency fee agreement does not impose a ceiling on the amount of attorney's fees a court may properly award, see *Blanchard* v. *Bergeron*, 489 U.S. 87, 96 (1989); nor does a court-awarded attorney's fee limit what a plaintiff must pay a lawyer under a contingency fee agreement.[8] See *Venegas* v. *Mitchell, supra* at 89. Statutory court awards generally do not "protect[] plaintiffs from having to pay what they have contracted to pay, even though their contractual liability is greater than the statutory award that they may collect from losing opponents." *Id.* An attorney is free, subject to the provisions of the rules of professional conduct, to negotiate such terms as attorney and client may agree on concerning the

---

[8]We agree, as a general rule, that the existence of "a [contingent] fee agreement is irrelevant to the issue of entitlement [to court-awarded fees] and should not enter into the determination of the amount of a reasonable fee. A private fee arrangement is not in itself 'special circumstances which would render an award unjust,' and unless the court finds such circumstances, it [should] not deny fees . . . ." *Sargeant* v. *Sharp*, 579 F.2d 645, 649 (1st Cir. 1978).

manner in which awards of attorney's fees are to be divided.[9] This does not mean, of course, that any contingent fee agreement is invulnerable to attack. See *Smith* v. *Consalvo, supra* at 197. A client may always challenge a fee which is "plainly unreasonable." *Gagnon* v. *Shoblom,* 409 Mass. 63, 67 (1991).

The real question is how court-awarded attorney's fees should be allocated when a contingent fee agreement has been executed that is either ambiguous or silent on the matter. At least one court, interpreting an ambiguous contingent fee contract, has allowed court-awarded fees to be added to the damages and the contingent fee applied to the aggregate. See *Carmichael* v. *Iowa State Highway Comm'n,* 219 N.W.2d 658, 662-664 (Iowa 1974). This approach, however, is subject to the serious criticism that the client may have been unaware of the possibility of court-awarded fees when he signed the contingent fee agreement and thus cannot be said to have meaningfully negotiated with regard to it. Courts have generally permitted the same result, so long as the contingent fee agreement clearly makes reference to the possibility of court-awarded attorney's fees and expressly provides for their aggregation with the damages.[10] See, e.g., *Chalmers* v. *Oregon Auto. Ins. Co.,* 263 Or. 449, 453-454 (1972). The better approach, followed by the United States Supreme Court in *Venegas* v. *Mitchell, supra,* simply permits the attorney to recover the amount set by the contingent fee agreement or the court-awarded fees, whichever is greater. See *Sullivan* v. *Crown Paper Bd. Co.,* 719 F.2d 667, 670 (3d Cir.

---

[9]Courts have held, however, that a dual recovery of both the court-awarded attorney's fee *and* the contingent amount owing under the contract is an "unwarranted windfall . . . which constitutes an unreasonable attorney fee in violation of [the applicable rule of professional conduct]." *State ex rel. Okla. Bar Ass'n* v. *Weeks,* 969 P.2d 347, 352 (Okla.), cert. denied, 525 U.S. 1042 (1998). See also *Venegas* v. *Skaggs,* 867 F.2d 527, 534 n.7 (9th Cir. 1989), aff'd sub nom. *Venegas* v. *Mitchell,* 495 U.S. 82 (1990); *Wilmington* v. *J.I. Case Co.,* 793 F.2d 909, 923 (8th Cir. 1986); *International Travel Arrangers, Inc.* v. *Western Airlines, Inc.,* 623 F.2d 1255, 1278 (8th Cir.), cert. denied, 449 U.S. 1063 (1980). We agree with this result.

[10]It must be acknowledged that an impecunious layperson, concerned primarily with obtaining a lawyer willing to pursue the claim on a contingent basis, without true bargaining power to negotiate over such an arrangement, might be quick to accept any proposal made by the lawyer. This situation exists to a degree with any lawyer-client fee arrangement and the protection is the same; the contingent fee must be reasonable to be enforced against the client and may not be clearly excessive in order to avoid violating our rule of professional conduct governing contingent fee agreements. Mass. R. Prof. C. 1.5, 426 Mass. 1315 (1998).

1983); *Sargeant* v. *Sharp*, 579 F.2d 645, 649 (1st Cir. 1978); *State ex rel. Okla. Bar Ass'n* v. *Weeks*, 969 P.2d 347, 356 (Okla.), cert. denied, 525 U.S. 1042 (1998); *Luna* v. *Gillingham*, 57 Wash. App. 574, 581 (1990); 1 R.L. Rossi, Attorneys' Fees § 2:13, at 126 (2d ed. 1995) ("unless the retainer agreement makes specific provision . . . the general trend is to calculate the contingency fee based on the amount of the judgment exclusive of the fee award, and then credit the fee award to the client as an offset against the contingency fee owed"). See also *Chalmers* v. *Oregon Auto. Ins. Co., supra* at 453. Under this approach, the contingent percentage is applied only to the award of damages. If the court-awarded fee is greater, the attorney receives the court-awarded fee, and the plaintiff's obligation to counsel shall be deemed settled in full. Should the contingency fee be greater, the court-awarded fee "offsets" the amount owed the attorney under the contingent agreement, and the plaintiff should be directed to pay to counsel only the difference between the statutory award and the contingent fee.

This approach prevents unfair surprise to a plaintiff who agrees to a payment of attorney's fees in the belief that his attorney will look to such fees as the sole source of compensation. "The client expects that the fee agreement will provide the sole source of income for the attorney. The attorney, on the other hand, has the technical knowledge and experience to be able to anticipate awards of attorneys' fees." *Hamilton* v. *Ford Motor Co.*, 636 F.2d 745, 749 (D.C. Cir. 1980). The "offset" approach also comports with the principle that contract ambiguities should be interpreted against the drafter,[11] "particularly [when] an attorney drafts a contingent fee contract which he knows will be signed by a person without legal training." *Benalcazar* v. *Goldsmith, supra* at 114. Under the contract before us, however, not only were both parties sophisticated generally and knowledgeable with respect to their contingent fee agreement, but under the language of the agreement the contingent percentage clearly was to be applied to the aggregate settlement, which included damages and attorney's fees.

3. What has been said in Part 2 of this opinion provides a framework for accommodating contingent fee agreements in

---

[11]Under the "offset" approach an attorney would usually, although not always, see *Benalcazar* v. *Goldsmith*, 400 Mass. 111, 113 (1987), collect a lesser amount than had the court-awarded attorney's fees first been added to the damages, and a percentage taken on the aggregate sum.

cases where attorney's fees are awarded by the court. We do not intend to foreclose further consideration of the topic. The standing advisory committee on the rules of professional conduct may, if it wishes, consider the topic and recommend a different approach or supplement what has been said by comments to the present rule governing contingent fee agreements (or by a revision of the rule itself).

*Judgment affirmed.*