R.W. Granger & Sons, Inc. *vs.* J & S Insulation, Inc.;
United States Fidelity & Guaranty Company,
defendant-in-counterclaim.[1]

No. 02-P-716.

Worcester. December 2, 2003. - May 3, 2004.

Present: Lenk, Mills, & Trainor, JJ.

*Attorney at Law,* Lien, Contingent fee agreement. *Lien. Rules of Professional Conduct. Consumer Protection Act,* Attorney's fees. *Practice, Civil,* Attorney's fees.

Under circumstances in which a law firm and its client exchanged several letters concerning the client's offer to the firm of a bonus to be paid in connection with the successful recovery of damages on a claim arising under G. L. c. 93A in litigation against multiple counterclaim defendants, the judge hearing a motion to enforce an attorney's lien correctly ruled that there was sufficient material compliance with the requirements of Mass.R. Prof.C. 1.5, 426 Mass. 1315 (1998), to enforce the agreement, and that the agreement was precise enough and free from impairment by reason of ambiguity so as to be fully enforceable [96-100]; moreover, the judge correctly decided that the agreement applied to a recovery against any of the counterclaim defendants and not just to one particular defendant [100]; however, the judge erred in including court-awarded attorney's fees in the bonus calculation [100-101].

This court concluded that a law firm seeking to enforce an attorney's lien waived its right to a portion of appellate attorney's fees. [101-102]

The judge hearing a motion by a law firm to enforce an attorney's lien against a particular client did not abuse his discretion in denying an evidentiary hearing to determine the reasonableness of the contingent fee agreement at issue, where, at a prior hearing on the client's motion to dissolve the law firm's notice of the attorney's lien, the client had presented the case as one turning on an issue of law and had not then requested a further hearing, offered additional evidence, or made any offer of proof as to any proposed witness testimony [102-103]; moreover, there was no merit to the argument that the agreement lacked consideration [103-104].

Civil action commenced in the Superior Court Department on May 11, 1992.

---

[1]Neither R.W. Granger & Sons, Inc. (Granger) nor United States Fidelity & Guaranty Company (USF&G) are parties to this appeal.

After review by the Supreme Judicial Court, 435 Mass. 66 (2001), motions with respect to an attorney's lien were heard by *Daniel F. Toomey*, J.

*Carol A. Frisoli* (*Lawrence Frisoli* with her) for J & S Insulation, Inc.

*Harvey B. Heafitz* (*James G. Grillo* with him) for Heafitz & Sullivan.

MILLS, J. After rescript in *R.W. Granger & Sons, Inc.* v. *J&S Insulation, Inc.*, 435 Mass. 66 (2001) (*Granger I*),[2] Heafitz & Sullivan, LLP (H&S or the law firm), filed a notice of attorney's lien for fees pursuant to G. L. c. 221, § 50. Their client, J&S Insulation, Inc. (J&S or the client), moved to dissolve the lien; the law firm moved to enforce and compel payment of fees; and a judge of the Superior Court entered orders enforcing the lien and denying the motion to dissolve. The judge specifically ordered J&S to pay H&S in the amount of $128,174. J&S appeals. We affirm in part and reverse in part.

1. *Background.* Reference should be made to the Supreme Judicial Court's opinion, *Granger I*, 435 Mass. at 68-71, for background of the progress of the litigation to the point of the Superior Court judge's fee award in the G. L. c. 93A judgment dated May 19, 1999. See note 2, *supra.* Here, we summarize the relationship between the law firm and the client, according to the evidence that was before the judge.[3]

J&S engaged the law firm in May of 1992 to defend a lawsuit by, and pursue counterclaims against, R.W. Granger & Sons, Inc. (Granger), which had commenced the underlying contract action against J&S for breach of a subcontract on a Massachusetts Port Authority project. H&S also counterclaimed on

---

[2]In *Granger I*, 435 Mass. at 70-71, the Supreme Judicial Court affirmed an amended judgment entered in the Superior Court against USF&G, comprised as follows: double damages under G. L. c. 93A, $820,491.66; interest, $25,161.76; and attorney's fees and costs, $120,631.52. The parties agree that, after adding postjudgment interest, the correct "judgment after rescript" amount is $1,281,741.10. This is the amount that USF&G eventually paid.

[3]We note that in addition to presiding at both trials, the judge attended to many nontrial litigation and case management matters between 1993 and 2002. Our determination of this case relies in part upon his extraordinary experience with the parties and their lawyers, and his ability to observe them during approximately nine years of litigation.

behalf of J&S against United States Fidelity & Guaranty Company (USF&G), alleging it was liable to J&S on Granger's surety bond to the same extent that Granger was liable to J&S on the subcontract. H&S's representation of J&S included the jury trial of the contract aspects of the case in 1994 and the trial of the nonjury G. L. c. 93A case in 1998.

Prior to the 1994 trial, a representative of J&S, in a telephone conversation with a representative of H&S, offered a ten percent bonus to be paid to the law firm in connection with a G. L. c. 93A damage recovery. That discussion did not result in a written contingent fee agreement. On November 8, 1996, J&S requested information "about any offer and confirmation of an offer . . . about a 10% contingency bonus." H&S responded in writing in March, 1997, "[r]elative to our discussions on the 10% bonus promised on the M.G.L. c. 93A claims . . . ." Then, in 1998 and just a few months prior to the nonjury trial of J&S's G. L. c. 93A claims against both Granger and USF&G, three letters were exchanged between the parties referencing the "bonus" compensation. Excerpts from those letters were quoted by the judge in his decision as follows:

> "1. '[H&S] would want to have a mutually satisfactory understanding on how we are going to deal with . . . my recollection of a 10% contingency bonus on any c. 93A recovery as per our prior communication in advance of doing further work on the case.' (Letter, Sullivan [H&S] to Boles [J&S], August 6, 1998);

> "2. '[H&S is] also requesting $5,000.00 toward the trial preparation and confirmation of the 10% contingency bonus in the event of a M.G.L. c. 93A recovery.' (Letter, Sullivan [H&S] to Hoover [J&S], October 5, 1998); and

> "3. 'Additionally, please let this serve as confirmation of the 10% contingency bonus in the event of a 93A recovery.' (Letter, Hoover [J&S] to Sullivan [H&S], October 23, 1998)."

H&S's representation continued for at least part of the appel-

late proceedings following the c. 93A trial.[4] Shortly after the Supreme Judicial Court's rescript was received by the trial court, the law firm filed notice of an attorney's lien pursuant to G. L. c. 221, § 50, claiming a ten percent "bonus" on the judgment proceeds.[5] J&S moved to dissolve the lien, arguing that (1) there was no enforceable contingent fee agreement because of noncompliance with Mass.R.Prof.C. 1.5, 426 Mass. 1315 (1998);[6] and (2) in any event, any such fee agreement did not apply to the G. L. c. 93A judgment against USF&G. H&S sought to enforce and compel payment. After a hearing,

[4]There is no conclusive evidence that the engagement of H&S was ever terminated. Accordingly, we need not address J&S's argument that the law firm, effectively discharged, was entitled to no more than quantum meruit recovery.

[5]J&S had paid, after some compromise, the primary, noncontingent fees charged by H&S in connection with both trials, which amounted to more than $175,000. Those base fees are not disputed by the parties.

[6]We consider the contingent fee agreement under the rule in effect when the contract was made. See *Cambridge Trust Co.* v. *Hanify & King Professional Corp.*, 430 Mass. 472, 476 & n.5 (1999). Rule 1.5 of the Massachusetts Rules of Professional Conduct, as in effect January 1, 1998, and until January 2, 2001, provided in relevant part:

"(c) A fee may be contingent on the outcome of the matter for which the service is rendered . . . . [A] contingent fee agreement shall be in writing and signed in duplicate by both the lawyer and the client within a reasonable time after making of the agreement. One such copy (and proof that the duplicate copy has been delivered or mailed to the client) shall be retained by the lawyer . . . . The writing shall state:

"(1) the name and address of each client;

"(2) the name and address of the lawyer or lawyers to be retained;

"(3) the nature of the claim, controversy, and other matters with reference to which the services are to be performed;

"(4) the contingency upon which compensation [is] to be paid, and whether and to what extent the client is to be liable to pay compensation otherwise than from amounts collected for him or her by the lawyer;

"(5) the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer out of amounts collected; and

"(6) the method by which litigation and other expenses are to be deducted from the recovery and whether such expenses are to be deducted before or after the contingent fee is calculated.

requested by J&S, and upon comprehensive affidavits and memoranda, the judge, while noting that strict compliance with the form suggested by Mass.R.Prof.C. 1.5(f) (hereinafter rule 1.5[f]) would have had the salutary effect of avoiding the instant dispute, ruled that the combined effect of three letters exchanged between J&S and H&S comported with the demands of Mass. R.Prof.C. 1.5(c) (hereinafter rule 1.5[c]) in all material respects. The judge also ruled that the agreement pertained to the G. L. c. 93A recovery against USF&G. He enforced the contract by ordering payment of $128,174 to the law firm. J&S appealed.

2. *Discussion.* We agree that there was sufficient material compliance with rule 1.5(c), in the circumstances of this case, to enforce the agreement. We also agree that the resulting fee agreement applies to the G. L. c. 93A damages awarded against USF&G. However, the agreement does not apply to the portion of the c. 93A judgment which represents the award of attorney's fees.

a. *Enforceability of the contingent fee agreement.*

Rule 1.5(c) permits the use of contingent fee arrangements that comply with its requirements. Although rule 1.5(f) sets forth a model form for such contracts, the rule permits "the use of other forms *consistent with this rule*" (emphasis supplied). The judge ruled that the three letters between H&S and J&S were materially consistent with rule 1.5(c), and thus the bonus agreement was enforceable. We agree.

The judge compared the contents and references within the three letters with the requirements of rule 1.5(c), finding most of the requirements satisfied and noting the irrelevance, under the specific circumstances of this case, of others. Because we

---

"Upon conclusion of a contingent fee matter for which a writing is required under this paragraph, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.

". . .

"(f) The following form of contingent fee agreement may be used to satisfy the requirements of paragraph (c). The authorization of this form shall not prevent the use of other forms consistent with this rule."

Mass.R.Prof.C. 1.5, 426 Mass. 1315 (1998).

deem it a question of law whether a particular agreement comports with the rule, we engage in our own comparison. We begin by noting that in 1998, rule 1.5(c), when broken down, imposed at least ten separate requirements for contingent fee agreements. We analyze each of them in turn.

i. *The agreement must be "in writing."* Rule 1.5(c). The communications which form the basis of the bonus agreement were by letter, and thus the requirement of a writing was satisfied.

ii. *The agreement must be "signed in duplicate by both the lawyer and the client within a reasonable time after the making of the agreement."* Rule 1.5(c). The judge found that it was "of no moment" that the agreement was not executed in duplicate, because the parties did not contest the authenticity of the writings. On appeal, J&S argues that the purpose of the duplicate requirement is to ensure that both parties fully understand the agreement. We conclude that the exchange of letters between the parties, all referring to the same terms (a ten percent bonus for a G. L. c. 93A recovery), sufficed for the duplicate requirement, especially where the last letter confirming the terms was executed by the client. Further, the parties to the agreement each had the opportunity to save copies of their letters before delivering them, and it appears that they both did just that, so that in fact there is no absence of duplicates.[7] This is not a case where there is but one master document containing the signatures of both parties, which the attorney kept without giving a duplicate to the client. Under these circumstances, the duplicate requirement was met.

iii. *The agreement must state "the name and address of each client."* Rule 1.5(c)(1). The letters, addressed to or from representatives of J&S, left no ambiguity as to the fact that J&S was the client.

iv. *The agreement must state "the name and address of the lawyer or lawyers to be retained."* Rule 1.5(c)(2). The letters, addressed to or from Patrick J. Sullivan of H&S, made clear that H&S was the law firm retained.

---

[7] For example, J&S acknowledged in a letter to the law firm on February 11, 2000, "I found the letter that I gave you stating that if you were successful in attaining a 93A against [*sic*] Grainger [*sic*] J&S would pay a 10% bonus out of the 93A money to [H&S]."

v. *The agreement must state "the nature of the claim, controversy, and other matters."* Rule 1.5(c)(3). All three letters referred with adequate specificity to the G. L. c. 93A claims.

vi. *The agreement must state "the contingency upon which compensation [is] to be paid."* Rule 1.5(c)(4). All three letters referred to a G. L. c. 93A recovery as the contingency upon which the bonus would be paid.

vii. *The agreement must state "whether and to what extent the client is to be liable to pay compensation otherwise than from amounts collected for him or her by the lawyer."* Rule 1.5(c)(4). The three letters address, in addition to the contingent bonus, payment of previously billed invoices and advances toward trial preparation fees. Since none of these fees were contingent upon the outcome of the proceedings, it was clear that J&S was liable for them, regardless of the amounts collected by the law firm.

viii. *The agreement must state "the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer out of amounts collected."* Rule 1.5(c)(5). All three of the letters referred explicitly to a ten percent bonus.[8]

ix. *The agreement must state "the method by which litigation and other expenses are to be deducted from the recovery and whether such expenses are to be deducted before or after the contingent fee is calculated."* Rule 1.5(c)(6). The judge referred to this particular requirement as "not pertinent." We read his ruling to mean that explicating the manner of deducting expenses was not essential in the context of this hybrid fee arrangement, because the parties had reached prior agreement as to the client's responsibility for hourly fees and expenses. As a general rule, it would be wise for any contingent fee agreement, including a hybrid agreement, to address the treatment of expenses more explicitly than the letters here. However, because these letters did not represent the entirety of the fee arrangements between the parties, we agree with the judge that the treatment of expense was not required to be reiterated in the specific circumstances of this case.

---

[8]We will discuss, *infra*, the applicability of the fee agreement to the recovery against USF&G in our discussion of the reach of the agreement.

x. *"Upon conclusion of a contingent fee matter . . . , the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of the determination."* Rule 1.5(c). We assume that this requirement applies primarily to situations where the proceeds of the litigation are paid directly to the attorney claiming the contingent fee, which was not the case here. In any event, there was ample evidence in the record to establish that the proceeds from USF&G, sent to another law firm in the form of a check payable to multiple parties, including H&S, were ultimately remitted to J&S, save the ten percent bonus put in a joint bank account pending resolution of the present matter. It was not the case here that H&S received the proceeds, withheld its alleged share, and then distributed the remainder to the client without explanation. Rather, immediately after the Supreme Judicial Court affirmed the G. L. c. 93A judgment against USF&G, and before the proceeds were received by a firm other than H&S, H&S sought a lien on its ten percent share and this litigation ensued.

Having determined that the agreement survives the threshold requirement of rule 1.5(c) compliance, we now turn to other questions of enforceability of the resulting contract. We are satisfied "that the agreement is precise enough and free from impairment by reason of ambiguity" so as to be fully enforceable. *Cambridge Trust Co.* v. *Hanify & King Professional Corp.*, 430 Mass. 472, 477 (1999). In *Cambridge Trust Co.*, involving the enforcement of a contingent fee agreement, the court noted that the client was adequately informed about and understood (or should have understood) the scope of the agreement. *Ibid.* The court looked to the business sophistication of the representatives of the corporate client and the extent to which the agreement was negotiated. *Id.* at 481. It was significant that the corporate client had the advice, throughout, of one of its directors who was a lawyer. *Id.* at 477-478. The court's opinion was sensitive to the issues of unfair surprise to a client and the potential of an inequality of bargaining power between attorney and client. *Id.* at 481. Keeping these considerations in mind, we agree with the judge that the agreement between the law firm and J&S is enforceable.

The record evidences fastidious communications between the law firm and client throughout the course of their relationship. H&S's assertion that Thomas Hoover, a principal representative of J&S, is an attorney (at least by 1997) was unrebutted. The notion of the ten percent contingent fee (initially offered unilaterally by J&S to H&S) was frequently "red flagged" in the correspondence between the parties. We conclude that the judge correctly ruled that the three letters established an enforceable contingent fee agreement in the particular circumstances of this case.[9]

b. *The reach of the agreement.* J&S argues that if there is an enforceable agreement, the agreement pertained only to damages on the G. L. c. 93A claim against Granger, and not the claim against USF&G, because only the claim against Granger was unambiguously present in the complaint that was tried to a jury in 1994. J&S asserts that the G. L. c. 93A claim against USF&G, the subject of a February, 1995, amendment to the complaint, could not have been within the contemplation of any such agreement.

The judge emphasized that the three letters contained no limitation and, indeed, alluded, severally, to *"any* c. 93A recovery," *"a* M.G.L. c. 93A recovery," and *"a* 93A recovery." The judge emphasized that the letters were executed in August and October of 1998 (when the parties were gearing up for the imminent nonjury trial), thus defeating J&S's argument that the G. L. c. 93A claim against USF&G was not within the contemplation of the parties to the contingent fee agreement. As of August and October, 1998, the major, acute, and timely litigation concerns of the parties were the scheduled trial of the G. L. c. 93A claims against *both* Granger and USF&G, and thus the bonus agreement applied to a recovery against either counterclaim defendant.

c. *Contingent fee on court-awarded attorney's fees.* In *Cambridge Trust Co.,* 430 Mass. at 478-479, the court concluded "that where a contingent fee agreement is ambiguous or silent

---

[9]Even if this particular arrangement were technically noncompliant, it would not necessarily be unenforceable. See *Daynard* v. *Ness, Motley, Loadholt, Richardson & Poole, P.A.,* 188 F. Supp. 2d 115, 123-132 (D. Mass. 2002), and cases cited.

as to how attorney's fees are to be treated, the contingent percentage must be calculated on the total amount minus the court-awarded fees, with the attorney awarded the greater of the two amounts."

In this case the letters do not mention treatment of an award of attorney's fees, and hence, "the . . . agreement is . . . silent." The judge awarded $120,631.52 as attorney's fees for the 1998 trial of the G. L. c. 93A action. H&S is therefore entitled to the greater of $120,631.52 or the agreed-upon fee, i.e., their hourly billed fees plus the bonus. In figuring the bonus, however, they must deduct the court-awarded fee before calculating their ten percent share. The recalculation must be done upon remand.[10] The judge erred by including the court-awarded fee in the bonus calculation.

d. *Attorney's fees awarded by the Supreme Judicial Court.* On August 1, 2002, the Supreme Judicial Court awarded J&S additional G. L. c. 93A attorney's fees in the amount of $227,498.70 for the defense of USF&G's appeal. USF&G promptly paid. As the fee controversy continued in the trial court, a different judge ordered ten percent of this appellate fee award be placed in a joint interest bearing account, subject to the resolution of this appeal. J&S states in its brief that "[t]he parties have agreed to allow the Appeals Court [to] address this issue," i.e., whether H&S is entitled to ten percent of the appellate fees. Similarly, H&S requests that this court decide this issue in their favor. We hold that H&S waived its right to a portion of the appellate fees when Attorney Patrick Sullivan stated unequivocally during the hearing on J&S's motion to dissolve

---

[10]Although the record indicates that J&S was billed and has paid "in excess of $175,609.37 . . . for all their legal fees," we cannot determine precisely how much of that amount was attributable to the G. L. c. 93A recovery. In a March, 1999, application for assessment of attorney's fees submitted by H&S, $25,614.19 in invoices appear to have been attributable to H&S's representation on the G. L. c. 93A claim against USF&G. Since this amount, combined with the bonus, was greater than the court-awarded fee, it appears that H&S was indeed entitled to a bonus of approximately $116,110.95 ([$1,281,741.10 - $120,631.52] x .10 = $116,110.95). H&S must refund to J&S any amount it was overpaid as a result of the error in calculation. We leave to the parties and to the Superior Court on remand to determine the precise amount of the refund.

the notice of attorney's lien, "We are not looking for fees on the appeal."

e. *J&S's other arguments.* J&S argues that the judge abused his discretion in denying an evidentiary hearing to determine the reasonableness of the contingent fee agreement, and that a party seeking review of the reasonableness of the attorney's fees is entitled to an evidentiary hearing, if requested. *Manganaro Drywall, Inc.* v. *White Constr. Co.*, 372 Mass. 661, 666 (1977).

There was a hearing on October 17, 2001, on J&S's motion to dissolve H&S's notice of attorney's lien. There, the attorney for J&S focused her arguments entirely on what she considered "the simple issue [that] will resolve this matter quickly," the alleged lack of a written contingent fee agreement complying with rule 1.5(c).[11]

At that hearing, the judge received documentary evidence, comprehensive arguments by counsel regarding the factual history of the fee relationships between the attorney and client, and narrative reminiscence of the course of the proceedings held before him. He stated that he understood the attorneys to be requesting, essentially, summary judgment in the matter, and the attorneys did not disagree. At the conclusion of the hearing, before taking the matter under advisement, the judge asked the attorneys, "What else do you need from me now?" Neither attorney requested further attention; J&S made no request for further hearing, evidentiary or otherwise. The judge decided in the law firm's favor on November 2, 2001.

A further hearing was held on November 20, 2001, on H&S's emergency motion to enforce the attorney's lien and on J&S's motion for evidentiary hearing on the matter. The judge noted that a prior hearing had been held (referring to October 17), and a decision already rendered. When asked why she did not then bring to the judge's attention "the matters that you now wish to have an evidentiary hearing about," J&S's attorney claimed that she had. She asserted that J&S had reserved its right to present

---

[11]The J&S attorney also argued that H&S was discharged prior to the appeal to the Supreme Judicial Court. Since H&S has waived entitlement to any fees for appellate work, any alleged failure of the trial judge to hold a hearing on the discharge claim is not relevant to the case that we decide.

evidence and, among other things, brought up the issue of consideration.

H&S argued that the substance of J&S's motion for evidentiary hearing was, in reality, a request for reconsideration. The judge took the matter under advisement, proposing to read the supporting and opposing documents and to make a determination on the request for evidentiary hearing. Approximately two weeks later, he determined that "there is no ambiguity in the documentary contingent fee agreement which would warrant the receipt of parol evidence or proof of unreasonableness at a further evidentiary hearing," and denied J&S's request.

The judge was within his discretion. We note that, at the outset, J&S presented this case as a simple one that turned on whether the contingent fee agreement complied with rule 1.5. At the conclusion of the October 17 hearing, there was no request by J&S for further hearing, nor offer of additional evidence, nor offer of proof as to any proposed witness testimony. The judge had before him, as we have already reiterated, substantial evidence and long experience with the claims, the parties, and their attorneys. The judge could well have considered J&S's latest request as one for reconsideration of a matter that had already been fully decided.[12] We are satisfied that, under these circumstances, J&S was not entitled to a further hearing. See *Manganaro Drywall, Inc.*, 372 Mass. at 666-667; *J.P. Constr. Co.* v. *Stateside Builders, Inc.*, 45 Mass. App. Ct. 920, 920-921 (1998).

Finally, there is no merit in J&S's argument that the judge erred by enforcing an agreement for which no consideration had been granted. In a nutshell, J&S argues that H&S was obligated to represent J&S, so that anything in the nature of a "bonus" lacked consideration because of a pre-existing contractual duty. We disagree.

The discussion of the bonus began in 1993. J&S repudiated any such agreement as of 1996. There was then, as we have noted, correspondence between the parties in 1998, sufficient for the formation of a contract. H&S was entitled to dispute its "obligation" to continue representing J&S in view of a history

---

[12]A minor adjustment of judgment computation was all that remained.

of payment problems and other attorney-client disputes. See Mass.R.Civ.P. 11(c), 365 Mass. 753 (1974); Mass.R.Prof.C. 1.16, comment [8], 426 Mass. 1373 (1998); *Eliot* v. *Lawton*, 7 Allen 274, 276 (1863); *LoCicero* v. *Hartford Ins. Group*, 25 Mass. App. Ct. 339, 344 (1988). At this point, pending hourly charges were negotiated and discounted. The willingness of H&S not to attempt to withdraw, and its discount of current bills, constituted any necessary consideration for the bonus agreement.

3. *Conclusion.* We reverse the amended judgment dated February 14, 2002, to the extent that the award of the bonus is based upon any more than the G. L. c. 93A recovery minus the court-awarded attorney's fees, and we remand to the Superior Court for recalculation of the bonus due H&S, and for entry of an order requiring H&S to refund any overpayment made by J&S as a result of any incorrect calculation. In all other respects, the judgment is affirmed.

*So ordered.*