APPEALS COURT 
 
 SUNRISE EQUIPMENT & EXCAVATION, INC. vs. CONSTRUCTION MANAGEMENT & BUILDERS, INC.

 
 Docket:
 23-P-594
 
 
 Dates:
 March 1, 2024 – September 5, 2024
 
 
 Present:
 Rubin, Englander, & D'Angelo, JJ.
 
 
 County:
 Plymouth
 

 
 Keywords:
 Attorney at Law, Contingent fee agreement, Lien. Contract, Contingent fee agreement, Construction of contract. Lien. Practice, Civil, Attorney's fees.
 
 

  
      Civil action commenced in the Superior Court Department on July 18, 2014.
      Following review by this court, 99 Mass. App. Ct. 1113 (2021), a motion to enforce an attorney's lien was heard by William F. Sullivan, J.
      Robert L. Hamer for the plaintiff.
      Joseph K. Curran, Jr., pro se.
      ENGLANDER, J.  At issue is whether the plaintiff, Sunrise Equipment & Excavation, Inc. (Sunrise), must pay a contingent attorney's fee to its trial counsel in this case, Joseph K. Curran, Jr.  Sunrise won a jury verdict of $400,000 in this breach of contract and G. L. c. 93A case in May of 2017.  Curran represented Sunrise up to and through trial and posttrial proceedings.  After the matter was appealed to this court, however, Sunrise replaced Curran as counsel.  This court affirmed the judgment, which (after adding attorney's fees and pre- and postjudgment interest) totaled over $800,000. 
      Curran claims that he performed the work for Sunrise pursuant to a contingent fee agreement; this appeal arises from Curran's efforts to collect that one-third contingency fee.  In 2021, after the appeal had been resolved, Sunrise and the defendant in the underlying case agreed to a payment of $812,000 in full satisfaction of the judgment, and thereafter, the judge addressed Curran's motion to enforce his attorney's lien, which Curran had previously filed.  Sunrise opposed the payment of a contingent fee, claiming that under Mass. R. Prof. C. 1.5 (c), as amended, 480 Mass. 1315 (2018), it did not have an enforceable contingent fee agreement with Curran, and that in any event, Curran was not entitled to a contingent fee because he had been replaced as counsel before the appeal had been resolved and Sunrise had been paid.  After an evidentiary hearing, the motion judge found that Curran and Sunrise had entered into an enforceable contingent fee agreement, and that Curran had satisfied the agreement's contingency by successfully handling the case in the trial court.  We now affirm the order enforcing the contingent fee agreement and determining and enforcing the attorney's lien.
      Background.  We draw our facts from the judge's findings as supplemented by undisputed facts.  In the spring of 2014, Curran met with Sunrise's general operations manager, Joseph Kerrissey, and agreed to represent Kerrissey and his businesses, including Sunrise, in five legal matters.  One of those legal matters was the instant litigation, a breach of contract and G. L. c. 93A action against Construction Management & Builders, Inc. (CMB).  Curran testified that as to this action, he and Kerrissey agreed that Curran would be compensated by (1) a small retainer, and (2) a contingent fee arrangement.[1]  Curran presented a copy of the contingent fee agreement at the evidentiary hearing; the agreement, dated July 7, 2014, bore signatures of both Curran, on behalf of his law firm, and Kerrissey, on behalf of Sunrise.  The agreement provided that the Law Office of Curran & Desharnais, P.C. would "render legal services . . . in connection with [Sunrise's] claims against [CMB]" (agreement or CMB agreement).  The agreement established two categories of compensation:  (1) an hourly billing arrangement of a rate of $190, up to a maximum of $5,000, and (2) payment in the amount of "one third . . . of any gross payment or any lump sum settlement [Sunrise] receive[d] by way of judgment, settlement, arbitration award or otherwise."  Importantly, the agreement contemplated "additional compensation" if there was an appeal, stating, "In the event of an appeal to the Appeals Court . . . , additional compensation will be payable for work performed, at the rate of $350.00 per hour."
      Although Curran testified that he kept a signed original copy of the agreement, he could not locate the original and instead a copy was admitted in evidence.  Kerrissey denied signing the agreement, but the motion judge expressly did not credit Kerrissey's testimony and found, to the contrary, that Kerrissey signed the agreement and also received an original of the agreement upon its execution.  Curran testified, and the judge found, that Curran also mailed a copy of the executed agreement to Kerrissey, but Curran did not maintain proof of this mailing.
      Curran began working on Sunrise's claims against CMB following the execution of the agreement.  The case required significant pretrial discovery and motion practice.  Curran represented Sunrise during the four-day jury trial in May of 2017, which resulted in a favorable verdict of $400,000 against CMB.  Curran continued to represent Sunrise throughout substantial posttrial proceedings; Curran successfully defended against motions, among others, for judgment notwithstanding the verdict and for a new trial, and he secured awards, postjudgment, of G. L. c. 93A attorney's fees ($73,965), and postjudgment security.  CMB appealed from the judgment in August of 2018.[2]  Following CMB's appeal, Curran also filed pleadings, which were ultimately unsuccessful, seeking to have the appeal dismissed on procedural grounds.
      While the appeal was pending the relationship between Kerrissey and Curran disintegrated.  Kerrissey was under financial pressure, and was seeking payment of the judgment as soon as possible.  Curran, who at that point had received roughly $1,200 in capped hourly compensation for his work on the case (spanning five years),[3] became concerned about being paid the contingency fee, and filed an attorney's lien in September of 2019.  Curran's action in filing the lien led to Kerrissey asking Curran to withdraw, which Curran did in November of 2019.  Successor counsel took over the appeal.
      This court decided the appeal in March of 2021, and affirmed the judgment.  See Sunrise Equip. & Excavation, Inc. v. Construction Mgt. & Bldrs., Inc., 99 Mass. App. Ct. 1113 (2021).  In June of 2021 Sunrise and CMB resolved the case for a lump sum payment of $812,000 to Sunrise.  The parties placed $270,000 in escrow pending the resolution of Curran's motion to enforce his attorney's lien.  Sunrise opposed Curran's motion, raising a variety of arguments, including (1) that there was no contingent fee agreement, (2) alternatively, that Curran was not entitled to the contingent fee because his representation ended before the case was concluded and Sunrise received payment, and (3) that the agreement Curran presented was unenforceable due to violations of Mass. R. Prof. C. 1.5 (c) (governing contingent fee agreements) -- for example, that Curran failed to maintain either an original signed agreement or proof that a duplicate copy had been delivered to his client, Sunrise.  Rather than pay a contingent fee, Sunrise's position was that Curran was entitled only to the $73,965 in fees awarded under G. L. c. 93A.
      In March of 2022, after an evidentiary hearing at which both Curran and Kerrissey testified, the motion judge entered a thoughtful order enforcing Curran's lien.  The judge found that the parties had entered into a valid contingent fee agreement.  He also ruled that Curran had satisfied the contingency by handling the case through a successful judgment, and that the contingent fee agreement "substantially meets" the requirements of rule 1.5 (c).  This appeal followed.
      Discussion.  1.  The validity of the contingent fee agreement.  It is of course generally permissible for an attorney and client to agree that an attorney's fee will be "contingent on the outcome of the matter for which the service is rendered."  Mass. R. Prof. C. 1.5 (c).  Rule 1.5 (c) of the Massachusetts Rules of Professional Conduct addresses such contingent fee agreements at length, requiring that such fee agreements be in writing and itemizing various terms that "shall" be addressed.  Id.  Our courts have held that the failure to follow certain of rule 1.5 (c)'s requirements can render a fee agreement unenforceable.  See R.W. Granger & Sons, Inc. v. J & S Insulation, Inc., 61 Mass. App. Ct. 92, 96-99 (2004) (discussing at length "threshold requirement of rule 1.5 [c] compliance").  See also Young v. Southgate Dev. Corp., 379 Mass. 523, 524-525 (1980) (under prior disciplinary rules governing professional conduct, contingent fee agreement unenforceable where client did not sign agreement).
      Before the motion judge, Sunrise advanced several arguments for why the agreement presented by Curran was unenforceable, and on appeal, Sunrise presses many of the same arguments.  Sunrise first argues that the judge committed clear error in finding that the parties actually executed a written contingent fee agreement.  The fee agreement copy in evidence, however, clearly bears the signatures of both Curran and Kerrissey, and Curran testified that Kerrissey signed the original of that agreement in Curran's office, with Curran present.  The judge credited Curran's testimony and expressly discredited Kerrissey's contrary testimony.  We of course give considerable deference to the factual findings of trial judges, and particularly to their credibility determinations.  See Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co., 445 Mass. 411, 421 (2005); Demayo v. Quinn, 87 Mass. App. Ct. 115, 116-117 (2015); Ginsberg v. Blacker, 67 Mass. App. Ct. 139, 140 n.3 (2006).  Here the testimony and documentary evidence are plainly sufficient to support the judge's finding that both parties signed the fee agreement.[4]  See Marlow v. New Bedford, 369 Mass. 501, 508 (1976), quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948) (finding is clearly erroneous only when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed").
      We note in addition that Sunrise's clear error argument is not compelling, because Sunrise does not marshal evidence that Kerrissey did not sign the agreement, but rather cites evidence that the judge was wrong as to the date the agreement was signed -- which the judge found was the date shown on the document, July 7, 2014.  But the exact date the agreement was signed is not critical here (indeed, Curran did not testify to a date on which it was signed); rather, what is important is that Kerrissey signed the agreement.  The judge so found, and that was not clear error.  On appeal, Sunrise speculates that Curran made up the copy of the CMB agreement he presented, by adding a copy of Kerrissey's signature taken from a different contingent fee agreement that Kerrissey signed with Curran; the argument, which essentially accuses Curran of fraud, has no support in the record and is built entirely on speculation.[5],[6]
      2.  The effect of the termination of representation.  Next, Sunrise argues that even if there is a valid contingent fee agreement, Curran cannot recover a contingent fee because his representation terminated before the contractual contingency was achieved.  Sunrise argues that under the agreement, the contingency could not be satisfied until "payment" was "receive[d]" on the judgment, and that Curran was terminated in 2019, well before payment was received in 2021.  Sunrise argues that in Massachusetts the general rule is that an attorney's termination (or withdrawal) prior to the contingency occurring cuts off the right to recover under a contingent fee agreement.  See Malonis v. Harrington, 442 Mass. 692, 701 (2004); Zabin v. Picciotto, 73 Mass. App. Ct. 141, 151 (2008).  Sunrise argues that attorneys terminated prior to the occurrence of the contingency instead may recover only the reasonable value of their services on a theory of quantum meruit.  See Halstrom v. Dube, 481 Mass. 480, 484 (2019), quoting Malonis, supra.[7]
      To bolster its argument, Sunrise relies on subsection (7) of rule 1.5 (c), which states that in order to pursue a claim for a fee where "the attorney-client relationship is terminated before the conclusion of the case," the contingent fee agreement must contain a clause notifying the client that such a claim is possible and of the "basis on which such expenses and fees will be claimed."[8]  Id.  Sunrise points out that no such clause appears in the CMB agreement, and argues that the failure to include the clause disables Curran from recovering, where Curran was terminated before the appeal was concluded and the case resolved.
      We are not persuaded by Sunrise's argument for the straightforward reason that, as we construe the contingent fee agreement, Curran had fully satisfied the contingency entitling him to payment before he was terminated.  Put differently, by successfully litigating the case to completion in the trial court -- leaving only the appeal to be worked -- Curran had performed all the work required by this contingent fee agreement to entitle him to a contingent fee, if the client ultimately received a payment.  We reach this conclusion as a matter of construction of the contract, which in the first instance is a matter of law for the court.  See Seaco Ins. Co. v. Barbosa, 435 Mass. 772, 779 (2002).
      To be sure, the contract could have been clearer as to when Curran would complete the work necessary to entitle him to the contingent fee.  The critical provision of Curran's agreement states in full:
      "Contingent Fee Compensation
"In addition to the Hourly Rate Compensation referred to above, the Attorney will also be entitled to additional compensation, depending on the outcome of Client's case against the defendant.  The additional compensation will be one third (33.33%) of any gross payment or any lump sum settlement Client receives by way of judgment, settlement, arbitration award or otherwise in addition to any expenses incurred.  The attorney shall be entitled to the greater of (i) the amount of any attorney's fees awarded by the court or included in the settlement or verdict, or (ii) the amount determined by application of the above 1/3 percentage to the recover[y of] said attorney's contingency fee (whichever is greater).  (Emphasis omitted.)
     "This Contingent Fee Compensation shall be reduced by any amount previously paid under the Hourly Rate Compensation provision referred to above.  In the event of an appeal to the Appeals Court, [or] Appellate Division of the District Court (if applicable), additional compensation will be payable for work performed, at the rate of $350.00 per hour."
      The question is, given this language, what work did Curran have to do to entitle him to the contingent fee?  Sunrise argues that Curran was not entitled to his contingent fee until the client "received" a "payment or . . . lump sum settlement," and that because Sunrise terminated Curran before Sunrise received payment, Curran did not satisfy the contingency.  In our view, however, this argument incorrectly conflates the question of what work would satisfy the contingency, with the question of when payment of the contingency would be required.  Our job is to read the agreement as a whole, "so as to give it effect as a rational business instrument . . . in a manner which will effectuate the intent of the parties," Kingstown Corp. v. Black Cat Cranberry Corp., 65 Mass. App. Ct. 154, 158 (2005), quoting New York Cent. R.R. v. New England Merchants Nat'l Bank, 344 Mass. 709, 714 (1962), and "to give reasonable effect to each provision."  Kingstown Corp., supra.  True, the contingent fee was not due under the agreement until the client first received its payment.  But as to the question of what work would entitle Curran to the fee (if successful), the agreement set out separate methods of compensation for work at the trial and appellate levels, expressly providing that "[i]n the event of an appeal . . . , additional compensation will be payable for work performed, at the rate of $350.00 per hour."  The logical reading of this clause is that the contingent fee was for Curran's work in the trial court; once on appeal, Curran would be compensated separately.  It follows that Curran had performed the work to satisfy the contingency when he successfully completed the work in the trial court, by securing a judgment (and G. L. c. 93A attorney's fees), and defending the judgment against posttrial motions.  By doing so Curran established his entitlement to the contingent fee, if and when the client received payment.[9]  And because Curran completed the work contemplated by the fee agreement before he was terminated, the provisions of rule 1.5 (c) (7) do not apply here.[10],[11]
      3.  Effect of violation of Mass. R. Prof. C. 1.5 (c).  Finally, Sunrise argues that the contingent fee agreement is unenforceable because Curran failed to comply with yet another requirement of Mass. R. Prof. C. 1.5 (c), which states:
"[A] contingent fee agreement shall be in writing and signed in duplicate by both the lawyer and the client within a reasonable time after the making of the agreement.  One such copy (and proof that the duplicate copy has been delivered or mailed to the client) shall be retained by the lawyer for a period of six years after the conclusion of the contingent fee matter."
      It is not disputed that Curran failed to comply with this passage.  Curran did not retain an original signed version of the agreement for six years, nor did he retain proof that the duplicate original had been delivered or mailed to his client.  Nevertheless, we agree with the motion judge that the failures by Curran do not render the agreement unenforceable.  Rule 1.5 (c) is a Massachusetts Rule of Professional Conduct for attorneys; it is not a statutory requirement.  The rules establish policies that the courts will consult and that must be heeded by the bar, but that does not equate to a conclusion that every violation of rule 1.5 (c) renders a contract voidable per se.[12]  And indeed, that is how violations of the rule have been treated in our courts.  Thus, in R.W. Granger & Sons, Inc., 61 Mass. App. Ct. at 96, this court considered the enforceability of a claimed contingent fee agreement where there was no single agreement signed by both parties, but where instead the agreement and its key terms could be determined from three letters the parties exchanged.  Although the agreement did not strictly comply with rule 1.5 (c), this court nevertheless enforced the agreement and upheld the award of fees.  R.W. Granger & Sons, Inc., supra.  We ruled that the three letters were "materially consistent with rule 1.5 (c)," and in particular, that the requirements that the agreement be "signed in duplicate" and that copies be retained were satisfied by the actions of the parties with respect to the three letters.  R.W. Granger & Sons, Inc., supra at 96-97.  Cf. Cambridge Trust Co. v. Hanify & King Professional Corp., 430 Mass. 472, 476 (1999).
      We agree with the motion judge that, as in R.W. Granger & Sons, Inc., 61 Mass. App. Ct. at 96, here the contingent fee agreement was in "sufficient material compliance" with rule 1.5 (c).  The question is one of law, R.W. Granger & Sons, Inc., supra at 96-97, and in deciding it we have in mind that the overriding purpose of the rule is "to protect clients from unreasonable fees."  Saggese v. Kelley, 445 Mass. 434, 441 (2005).  Here there is no suggestion that the fee sought is unreasonable.  The amount of the fee, one-third of the recovery, is a common provision that is not unreasonable.  See Smith v. Consalvo, 37 Mass. App. Ct. 192, 197-198 (1994).  The judge specifically found that the agreement existed and was signed by Kerrissey, who was given an original of the agreement.  The existence of the agreement is circumstantially corroborated by other facts of record, not least of which is that Curran worked the case for five years essentially without compensation.[13]  It is true, as Sunrise states, that the language of the rule quoted above is also intended to forestall disputes like the one at issue, which perhaps suggests that the rule ought to be enforced strictly.[14] But the same was true in R.W. Granger & Sons, Inc., yet this court enforced an even less formal agreement in that case.  On this record we agree with the motion judge that the agreement should be enforced.  A contrary result would allow Sunrise an unjustified windfall.
      Conclusion.  The order determining and enforcing the attorney's lien is affirmed.
                                          
 
So ordered.
footnotes

          [1] Curran and Kerrissey entered into similar contingent fee arrangements for some of the other matters in which Curran represented entities controlled by Kerrissey.
          [2] Curran & Desharnais, P.C., spent 236 hours on Sunrise's case against CMB prior to and through July 10, 2018.
               [3] Curran received a $5,000 retainer at the inception of the case, but the retainer was used for the several cases he was handling for Kerrissey.  Curran estimated that approximately $1,200 was applied to the CMB case.
          [4] Sunrise does not renew the argument it made in the trial court concerning the best evidence rule.  We note that, under that rule, where the original has been lost, destroyed, or is otherwise unavailable, not through bad faith by the document's proponent, "its production may be excused and other evidence of its contents will be admissible."  See Commonwealth v. Ocasio, 434 Mass. 1, 6-7 (2001).
          [5] For example, Sunrise suggests in its brief that "the signature from the Nauset [contingent fee] agreement was later appended to" the CMB agreement.  But Sunrise points to no evidence to support this contention; for example, Sunrise did not offer a comparison of the signatures on the two documents or any analysis of the authenticity of the copy in evidence.  Remarkably, Sunrise states in its brief that it did not have a copy of the Nauset agreement, leaving one to wonder how it could make the above assertion.
               [6] We note that evidence of a course of dealing between the parties, and in particular the negotiation of other contingent fee agreements with "the same or substantially similar terms" may also be considered in determining whether an enforceable contract exists.  See Situation Mgt. Sys., Inc. v. Malouf, Inc., 430 Mass. 875, 878-879 (2000).  Here Curran represented Kerrissey in several other legal matters on a contingent fee basis.  Kerrissey did not challenge these similar arrangements, and in at least some instances Curran was paid a contingent fee after he secured a settlement.
               [7] We note that in Salem Realty Co. v. Matera, 384 Mass. 803, 804 (1981) (Matera), the Supreme Judicial Court indicated that it might permit an attorney to recover under a contingent fee agreement upon a showing of substantial performance.  See Craft v. Kane, 51 Mass. App. Ct. 648, 653 (2001).  As we conclude that Curran fully satisfied the contingency entitling him to payment here, we need not address any issue of substantial performance.
                [8] Rule 1.5 (c) (7) states that the written contingent fee agreement shall include notice, "if the lawyer intends to pursue such a claim," of "the client's potential liability for expenses and reasonable attorney's fees if the attorney-client relationship is terminated before the conclusion of the case for any reason, including a statement of the basis on which such expenses and fees will be claimed, and, if applicable, the method by which such expenses and fees will be calculated."
          [9] Rule 1.5 includes two model contingent fee agreements that "may be used to satisfy the requirements of [rule 1.5] (c)," see Mass. R. Prof. C. 1.5 (f) (1), as amended, 480 Mass. 1315 (2018), and adds that the authorization to use the forms "shall not prevent the use of other forms consistent with this rule."  Mass. R. Prof. C. 1.5 (f) (3).  See Matter of the Discipline of an Attorney, 451 Mass. 131, 138 (2008).  The first statutory model form describes the contingency upon which compensation depends as "recovery of damages, whether by settlement, judgment or otherwise"; and the second model form leaves a blank area for the attorney to describe "[t]he contingency upon which compensation is to be paid."  The language of the contingent fee agreement at issue here differs from that of the model forms, and our analysis herein is necessarily directed to the agreement at issue.  Practitioners may well want to examine the language they employ, as it bears on the issue this case raises.
               [10] We recognize that rule 1.5 (c) (7) refers to those circumstances where the lawyer seeking a fee was terminated "before the conclusion of the case" (emphasis added).  Id.  Here Curran was terminated after proceedings ended in the trial court, but arguably before "the case" was finished, as the appeal was pending.  We do not view rule 1.5 (c) (7) as applying here, however, because in our view, rule 1.5 (c) (7) is directed to situations where the lawyer does not complete the work contemplated to achieve the contingency prior to termination.
               [11] Curran argued to the motion judge that even if he was terminated prior to the contingency being satisfied, he nevertheless should be able to recover under the agreement because he was terminated in "bad faith."  Our courts have recognized a potential bad faith exception to the general rule that prohibits an attorney from recovering on a contingent fee agreement after termination.  See Matter of the Discipline of an Attorney, 451 Mass. at 143 n.16; Malonis, 442 Mass. at 697 n.6; Opert v. Mellios, 415 Mass. 634, 636-638 (1993); Matera, 384 Mass. at 804 (recognizing that if attorney has substantially performed, bad faith termination might permit attorney to recover under contingent fee agreement); Craft v. Kane, 65 Mass. App. Ct. 322, 325 (2005) (no recovery under contingent fee contract in part because no bad faith termination occurred).  In Matera, supra, the Supreme Judicial Court discussed various factors that a court may weigh to determine if an attorney may recover under a contingent fee contract after unilateral termination but when the attorney has substantially performed under the contract, including the client's bad faith in terminating the attorney.  Here the motion judge found that even if the contingency had not been met prior to Curran's termination, Sunrise terminated Curran in bad faith.  However, because of our conclusion discussed above, we need not address the issue of bad faith.
          [12] Of course, violations of the Massachusetts Rules of Professional Conduct are also subject to oversight by the Board of Bar Overseers.  See S.J.C. Rule 4:01, § 3 (1), as appearing in 453 Mass. 1308 (2009).
          [13] After the entry of judgment in the trial court, Kerrissey utilized the judgment to raise funds immediately, by assigning a portion of his interest in the judgment to BARIC ENTERPRISES, INC. (BARIC).  E-mail exchanges between Curran, Kerrissey, and BARIC during the process of documenting this transaction reference Curran's right to a contingent fee equal to "(1/3) of the entire recovery"; the statement was not challenged by Kerrissey.  Indeed, Kerrissey signed several notices to Curran authorizing Curran to make distributions from the judgment to BARIC, after Curran had first been paid his "agreed legal fee."
               [14] We do not suggest that the requirements of rule 1.5 (c) should be honored in the breach.  To the contrary, practitioners are well advised to familiarize themselves with the rule, and must follow it.